*In re* C.R. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Everett E. Welch *et al.*, Respondents-Appellants).

Fifth District   Nos. 5—86—0504, 5—86—0514 cons.

Opinion filed December 7, 1987.

Warren N. Loar IV, of Musick & Mitchell, P.C., of Mt. Vernon, for appellant Connie S. Welch.

John W. McGuire, of Mt. Vernon, for appellant Everett E. Welch.

Kathleen Alling, State's Attorney, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Respondents, Everett E. Welch and Connie Welch, appeal from an order of the circuit court of Jefferson County terminating their parental rights and appointing for the children a guardian with power to consent to adoption. Respondents contend the court had no authority to enter such an order because no petition for adoption had previously been filed. We affirm.

Connie Welch is the natural mother of the 10 minor children involved in these proceedings. Everett Welch is the natural father of several of these children. On November 14, 1984, the Department of Children and Family Services (hereinafter the Department) filed a petition alleging the children were neglected. After a hearing on this petition, the circuit court on February 19, 1985, found the children were neglected and awarded temporary guardianship and custody to the Department. After another hearing held on March 20, 1985, the court adjudicated the children wards of the court and granted custody and guardianship to the Department. On March 25, 1986, the Department filed a supplemental petition alleging that respondents were unfit, and requesting that the parental rights of respondents be terminated and that the Department be appointed guardian of the minors with power to consent to their adoption. A hearing on this supplemental petition was held on July 2, 1986, after which the court found respondents to be unfit, terminated their parental rights, and appointed the Department as guardian with power to consent to adoption.

Respondents do not challenge the sufficiency of the evidence presented on the question of their fitness. Their sole argument on appeal is that the court did not have authority to terminate their parental rights or to appoint a guardian with power to consent to adoption because no petition for adoption had previously been filed.

The trial court entered its order terminating parental rights and empowering the Department to consent to adoption pursuant to section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*), which provides:

"(1) A ward of the court under this Act, with the consent of the court, may be the subject of a petition for adoption under 'An Act in relation to the adoption of persons, and to repeal an Act therein named', approved July 17, 1959, as amended, or with like consent his or her parent or parents may, in the manner required by such Act, surrender him or her for adoption to an agency legally authorized or licensed to place children for adoption.

(2) If the petition prays and the court finds that it is in the best interests of the minor that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court with the consent of the parents, if living, or after finding, based upon clear and convincing evidence, that a nonconsenting parent is an unfit person as defined in Section 1 of "An Act in relation to the adoption of persons, and to repeal an Act therein named", approved July 17, 1959, as amended,

may empower the guardian of the person of the minor, in the order appointing him or her as such guardian, to appear in court where any proceedings for the adoption of the minor may at any time be pending and to consent to the adoption. Such consent is sufficient to authorize the court in the adoption proceedings to enter a proper order or judgment of adoption without further notice to, or consent by, the parents of the minor. An order so empowering the guardian to consent to adoption terminates parental rights, deprives the parents of the minor of all legal rights as respects the minor and relieves them of all parental responsibility for him or her, and frees the minor from all obligations of maintenance and obedience to his or her natural parents.

If the minor is over 14 years of age, the court may, in its discretion, consider the wishes of the minor in determining whether the best interests of the minor would be promoted by the finding of the unfitness of a nonconsenting parent.

(3) Parental consent to the order authorizing the guardian of the person to consent to adoption of the Minor shall be given in open court whenever possible and otherwise must be in writing and signed in the form provided in 'An Act in relation to the adoption of persons, and to repeal an Act therein named', approved July 17, 1959, as amended, but no names of petitioners for adoption need be included. A finding of the unfitness of a nonconsenting parent must be made in compliance with that Act and be based upon clear and convincing evidence. Provisions of that Act relating to minor parents and to mentally ill or mentally deficient parents apply to proceedings under this Section and shall be based upon clear and convincing evidence." Ill. Rev. Stat. 1985, ch. 37, par. 705—9.

■■ The Juvenile Court Act contains no express requirement that a petition for adoption be filed before parental rights are terminated under section 5—9. Respondents contend, however, that the first sentence of paragraph (2) of this section, which begins, "If the petition prays," refers to a petition for adoption under the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501 *et seq.*). They argue that because paragraph (1) refers to a petition under the Adoption Act, the reference to "the petition" in paragraph (2) must also be to a petition for adoption. Respondents thus contend that section 5—9 assumes that a petition for adoption must be filed before a court can terminate parental rights under this section. In addressing this argument, we acknowledge that the Adoption Act requires that its provisions be con-

strued in concert with the Juvenile Court Act. Ill. Rev. Stat. 1985, ch. 40, par. 1503.

We believe the legislature was not referring to a petition for adoption when it included the term "petition" in section 5—9(2) of the Juvenile Court Act, but instead was referring to a petition seeking to have a guardian appointed and empowered to consent to adoption. Such a petition is authorized under section 4—1(5) of the Juvenile Court Act, which provides: "If appointment of a guardian of the person with power to consent to adoption of the minor under Section 5—9 is sought, the petition shall so state." (Ill. Rev. Stat. 1985, ch. 37, par. 704—1(5).) There is no provision in the Adoption Act which refers to such a petition. Moreover, several provisions of the Juvenile Court Act and the Adoption Act indicate that the legislature has allowed for the termination of parental rights under section 5—9 prior to the filing of a petition for adoption.

First, section 5—9(2) of the Juvenile Court Act provides that the court may appoint a guardian and empower the guardian "to appear in court where any proceedings for the adoption of the minor *may at any time be pending* and to consent to the adoption." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 37, par. 705—9(2).) This provision without doubt contemplates that adoption proceedings might be commenced after the guardian has been given power to consent to adoption. If the legislature had intended that parental rights could be terminated only after commencement of adoption proceedings, the legislature could have easily stated that the guardian could appear in court where any proceedings for the adoption of the minor "are then pending," rather than the language it chose, *i.e.*, "may at any time be pending."

Next, section 1(D)(h) of the Adoption Act provides that a court considering a petition for adoption is bound by proceedings under the Juvenile Court Act terminating parental rights. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(h).) The legislation thus acknowledges that parental rights can be terminated under section 5—9 of the Juvenile Court Act independent of any adoption proceeding. Further, section 5(B)(f) of the Adoption Act states that if the rights of the parents have already been terminated, the petition for adoption must omit the names and addresses of the parents and the parents shall not be made parties to the petition. (Ill. Rev. Stat. 1985, ch. 40, par. 1507(B)(f).) Here again, the Adoption Act assumes that parental rights can be terminated prior to the filing of a petition for adoption. Also, section 5(B)(j) of the Adoption Act provides that a petition for adoption shall state: "That the person or agency, having authority to consent under Sec-

tion 8 of this Act, has consented, or has indicated willingness to consent, to the adoption of the child by the petitioners, or that the person having authority to consent is an unfit person and the ground therefor, or that no consent is required under paragraph (f) of Section 8 of this Act ***." (Ill. Rev. Stat. 1985, ch. 40, par. 1507(B)(j).) Section 8(d) of the Adoption Act provides that an agency has authority to consent to adoption "if the parental rights of the parents have been judicially terminated, and the court having jurisdiction of the guardianship of the child has authorized the consent to the adoption." (Ill. Rev. Stat. 1985, ch. 40, par. 1510(d).) These provisions assume that the person or agency already has the authority to consent to adoption, and thus that parental rights have already been terminated at the time the petition for adoption is filed.

Finally, if respondents' position is accepted, there would be no need for the provisions of section 5—9 of the Juvenile Court Act, because unfitness could only be determined after a petition for adoption had been filed, a procedure fully provided for in the Adoption Act. We certainly cannot assume a useless act on the part of the legislature.

Consistent with our construction of the legislation is the opinion in *In re Workman* (1978), 56 Ill. App. 3d 1007, 373 N.E.2d 39, *aff'd on other grounds* (1979), 76 Ill. 2d 256, 390 N.E.2d 900, *cert. denied sub nom. Gillion v. Illinois* (1979), 444 U.S. 992, 62 L. Ed. 2d 422, 100 S. Ct. 525, where the question was whether a parent was entitled to a hearing on a petition to restore her parental rights after they had been terminated under section 5—9 of the Juvenile Court Act. The appellate court concluded that an order terminating parental rights does not contemplate the survival of any residual rights in the natural parents. (56 Ill. App. 3d at 1011, 373 N.E.2d at 42.) The court noted that foster parents were waiting for the final termination of the parent's rights before filing a petition for adoption. The court rejected the argument that the natural parent should be given notice or joined as a party when the adoption petition was filed at some time in the future. The court stated: "The legislature has determined that the best interest of children of unfit parents requires a final and permanent termination of all legal rights of the parents in advance of the adoption decree." (56 Ill. App. 3d at 1011, 373 N.E.2d at 42.) We believe, as the court in *Workman* did, that parental rights of a natural parent can be terminated prior to the filing of a petition for adoption.

■ Respondents assert that they should be given the opportunity to consent to the actual adoption of their children prior to being declared unfit. They cite language in section 5—9 which states that the court may appoint a guardian with power to consent to adoption upon

consent of the parents, or after a finding "that a non-consenting parent is an unfit person." They argue that "non-consenting" here means the parents have refused to consent to a pending adoption petition.

This contention is meritless. One of the residual parental rights lost when a court orders that parental rights be terminated is the right to consent to the adoption of one's children. (See Ill. Rev. Stat. 1985, ch. 37, par. 705—9(2); *In re Johnson* (1977), 54 Ill. App. 3d 627, 631, 370 N.E.2d 560, 562.) As stated in *Workman*, the legislature has determined that when a parent is unfit, the best interest of the child requires a final and permanent determination of parental rights even prior to adoption proceedings. Furthermore, we believe it is apparent that the term "non-consenting" in section 5—9(2) means not consenting to the appointment of a guardian with power to consent to adoption rather than not consenting to an adoption petition. Respondents argue that if this is true, they still should have been given the opportunity to consent to the appointment of a guardian. There is nothing in the statute requiring that they be advised of the consent provision or given the opportunity to consent. Having been found unfit by the court, respondents' parental rights were to be terminated regardless of their consent. The consent provision in section 5—9 merely relieves the State from having to prove unfitness, and a failure to advise parents of their power to consent does not affect the determination of unfitness.

We conclude that the legislature has allowed for the termination of parental rights under section 5—9 of the Juvenile Court Act prior to the filing of a petition for adoption. Therefore, the order of the circuit court of Jefferson County is affirmed.

Affirmed.

KARNS, P.J., and WELCH, J., concur.