*In re* MARRIAGE OF MARTINA MARIE VEST, Petitioner-Appellee, and REX IRVIN VEST, Respondent-Appellant.

Fifth District No. 5—89—0467

Opinion filed February 8, 1991.

Steven E. Katzman, of Belleville, for appellant.

Robert E. Wells, Jr., of Pessin, Baird, Belsein & Wells, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Respondent, Rex Irvin Vest, appeals the trial court's allowing petitioner Martina Marie Vest's petition for disposition of property, which sought a portion of respondent's military pension pursuant to section 510.1 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510.1). In orders entered on December 30, 1988, and June 14, 1989, the court awarded petitioner, *inter alia,* one-half of respondent's pension and $1,000 toward her attorney fees. Subsequent to the filing of respondent's notice of appeal from these orders, petitioner filed a petition for attorney fees on appeal. On October 25, 1989, the trial court ordered respondent to pay $2,500 toward petitioner's attorney fees on appeal. Respondent has also appealed this award of fees, and both appeals have been consolidated.

Respondent and petitioner were married on December 6, 1953. Respondent joined the armed forces in January 1954 and retired in January 1974. On April 15, 1982, the trial court entered its judgment of dissolution and approved a written separation agreement providing for the settlement of matters relating to custody, support and education of the couple's remaining minor child, support and maintenance of the parties, and property and marital rights.

On October 26, 1987, petitioner filed a petition for dissolution of property alleging an interest in respondent's military retirement benefits and requesting division thereof under section 510.1 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 510.1). On March 28, 1988, respondent filed an affirmative defense alleging that the original disposition of military retirement benefits was appropriate.

At the time of the entry of the judgment of dissolution, the Supreme Court case of *McCarty v. McCarty* (1981), 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728, was effective law. It held that Federal law precluded State courts from dividing military pensions in dissolution-of-marriage proceedings. But, on February 1, 1983, Congress enacted the Uniform Services Former Spouses' Protection Act (10 U.S.C. §1408(c)(1) (1983)), which abrogated the application of the *McCarty* decision to all dissolutions of marriage retroactive to the issuance of *McCarty. In re Marriage of Bingham* (1989), 181 Ill. App. 3d 966, 968-69, 537 N.E.2d 1158, 1159-60.

The State of Illinois thereafter enacted section 510.1 of the Act, which provides, in pertinent part:

"Section 510.1. Division of military retirement benefits. (a) Agreements, judgments or orders that became final on or after June 26, 1981, and before February 1, 1983, may be modified

to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this State as it existed before June 26, 1981, and as it has existed since February 1, 1983.

\* \* \*

(c) An opponent of a modification requested under this Section may raise affirmatively that the original disposition of military retirement benefits was appropriate when all factors under Section 503 of this Act are considered." (Ill. Rev. Stat. 1987, ch. 40, pars. 510.1(a), (c).)

Section 510.1 was repealed by its own terms on January 1, 1989. Ill. Rev. Stat. 1987, ch. 40, par. 510.1(e).

■■ ■ Respondent contends for the first time on appeal that section 510.1 is unconstitutional. The rule that issues not raised or preserved for review in the trial court are waived applies to constitutional and nonconstitutional issues. (*In re Marriage of Savas* (1985), 139 Ill. App. 3d 68, 74, 486 N.E.2d 1318, 1323; see also *In re Marriage of Pool* (1983), 118 Ill. App. 3d 1035, 1038, 455 N.E.2d 887, 890.) In civil proceedings, the acts of the parties to the litigation which by fair inference acknowledge the validity of a statute or rule are binding and preclude an attack thereon as unconstitutional. (*Savas*, 139 Ill. App. 3d at 74, 486 N.E.2d at 1323.) We therefore will not consider the issue here, except to note that in *Barnes v. Barnes* (1987), 43 Cal. 3d 1371, 743 P.2d 915, 240 Cal. Rptr. 855, the California Supreme Court upheld the constitutionality of a California statute almost identical to section 510.1.

■■ ■ Respondent next argues that the trial court erred in finding that he had failed to prove the affirmative defense set forth in section 510.1(c), *i.e.*, "that the original disposition of military retirement benefits was appropriate." (Ill. Rev. Stat. 1987, ch. 40, par. 510.1(c).) Modification of a divorce decree rests in the sound discretion of the trial court, and courts of review will not disturb its findings unless the evidence clearly so requires. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 313, 474 N.E.2d 28, 30.) We believe the evidence in this case does so require. Although no division of respondent's military retirement pension was made in the settlement agreement and the judgment of dissolution, because such was prevented at the time by the *McCarty* case, it is nonetheless evident that the parties and the trial court gave full recognition to the payments generated by that pension in making the division of the marital property in this case.

The record reveals that petitioner received two of the parties' three

cars, a 1969 Ford station wagon and a 1974 Mercury wagon, the vast majority of the household furnishings, 60% of respondent's IRA, one-half of the cash value of respondent's life insurance policies, $50 per week in maintenance for a period of four years, and $100 per week in child support for as long as the couple's remaining minor child remained a full-time student. Respondent assumed all marital debts, with the exception of a debt owed to petitioner's parents and daughter in the amount of $4,000, of which respondent paid half. Respondent received his clothes, a clothes hamper, his tools and an automobile, a 1977 Ford LTD upon which some $2,000 was owed, and the remainder of his IRA and life insurance policies. Respondent received his military retirement pension as "his non-marital property."

According to section 510.1(c), the trial court, in determining whether respondent had established that the original disposition of military retirement benefits was appropriate, was to consider the factors enumerated in section 503. (Ill. Rev. Stat. 1987, ch. 40, par. 510.1(c).) Those factors listed in section 503 which are particularly relevant to this cause are: the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and nonmarital property, including the contribution of a spouse as a homemaker or to the family unit; the value of the property set apart to each spouse; the duration of the marriage; the relevant economic circumstances of each spouse when the division of property is to become effective; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; the custodial provisions for any children; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse for future acquisition of capital assets and income. Ill. Rev. Stat. 1987, ch. 40, pars. 503(d)(1) through (d)(4), (d)(7) through (d)(10).

As petitioner correctly notes, she had made a substantial contribution to the couple's near 30-year marriage as a homemaker and mother to the couple's six children. Additionally, at the time of the original proceeding, petitioner lacked the vocational skills and employability possessed by respondent. However, petitioner received the bulk of the marital assets, was relieved of a majority of the marital indebtedness, and received maintenance and child support so that she and the couple's 17-year-old daughter might seek the education or training they might need to become employable and self-sufficient. Further, as respondent suggests, petitioner effectively received a portion of the pension in the original disposition. Without resorting to the income received from his pension, respondent clearly could not have paid $150 per week in combined

child support and maintenance on only the net amount of $215.09 per week received from his employment as a mechanic.

Additionally, respondent's former attorney, Terry Brown, testified that petitioner's attorney had threatened to appeal the issue of the pension unless respondent accepted petitioner's settlement proposal. Brown further testified that he told respondent that he would not recommend the settlement because he believed the trial court would order substantially less amounts of support and maintenance if the matter were to be tried. Brown stated that respondent "indicated that he wished to take [the] settlement to avoid any problems with an appeal concerning the pension benefits."

■ Thus, the evidence reveals that the original disposition of military retirement benefits was part of a carefully derived plan that, when considering the relevant section 503 factors, was fair to both parties. We therefore find that the trial court erred in rejecting respondent's affirmative defense. As respondent so aptly stated in his brief on appeal, "[i]t would be totally unjust to allow [petitioner] to reap the benefits of an advantageous marital settlement agreement in exchange for the pension, and then allow her to have half the pension as well."

Where the original disposition of military retirement benefits was appropriate, the trial court's orders granting petitioner's petition for disposition of property must be reversed. In view of this determination, we need not address respondent's additional contentions that the trial court erred in making a retroactive award of benefits and in ordering respondent to pay one-half the cost of the survivor benefit plan to petitioner.

■ Respondent's final contention is that the trial court erred in ordering him to pay petitioner's attorney fees. Respondent was ordered to pay $1,000 toward petitioner's attorney fees incurred at the trial court level and another $2,500 toward her fees on appeal. Ordinarily, the party for whom legal services were rendered is responsible for those fees. However, section 508 of the Act provides that a court may order a former spouse to pay a reasonable amount for attorney fees necessarily incurred by the other spouse in connection with the enforcement or modification of any order or judgment and the defense of an appeal of any order or judgment under the Act, including the defense of appeals of post-judgment orders. Ill. Rev. Stat. 1987, ch. 40, pars. 508(a)(2), (a)(3).

■ ■ A party seeking an award of attorney fees must show a financial inability to pay the fees and a corresponding ability of the ex-spouse to do so. Financial inability to pay does not require a showing of destitution. (*In re Marriage of Stadheim* (1988), 170 Ill. App. 3d 19, 25,

523 N.E.2d 1284, 1288.) Furthermore, the party seeking fees should not be required to liquidate his assets to pay his own fees before there can be a finding of inability. (*In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 964, 511 N.E.2d 1157, 1163.) The allowance of attorney fees and the amount awarded are matters within the sound discretion of the trial court. Absent an abuse of the court's discretion, a fee award will not be reversed on appeal. *Stadheim*, 170 Ill. App. 3d at 25, 523 N.E.2d at 1288.

Here, the trial court determined that petitioner was financially unable to pay her fees while respondent had the ability to do so. The record reveals that at the time the fee awards were made, respondent was gainfully employed and had a gross income of more than $20,000 per year from his employment. Additionally, respondent received in excess of $11,000 annually as distribution from pensions and annuities. Petitioner, a licensed day care provider, had some $6,000 per year in income.

Each party maintains savings in an IRA and each argues on appeal that he or she should not be required to resort to this source in order to pay attorney fees. However, at the time of the October 25, 1989, hearing, respondent was current in his attorney fees, while petitioner had an outstanding bill in excess of $5,000, which sum did not include her attorney fees on appeal. We conclude that based on the financial information before the trial court, the court was within its discretion in requiring respondent to pay petitioner's attorney fees in the amount awarded.

Given that our decision here will assure respondent's continued receipt of his entire pension, his payment of petitioner's attorney fees will not likely work any undue hardship. Nor does our disposition of the pension issue require reversal of the fee award. There is no prohibition against awarding attorney fees to an unsuccessful litigant. (*In re Marriage of McCaskey* (1988), 167 Ill. App. 3d 860, 866, 522 N.E.2d 300, 304.) Petitioner proceeded in good faith in an action to modify the judgment of dissolution under a statutory section provided precisely for that purpose.

Accordingly, we affirm those portions of the trial court's orders of December 30, 1988, June 14, 1989, and October 25, 1989, regarding attorney fees, but reverse the remaining portions of the trial court's orders of December 30, 1988, and June 14, 1989.

Affirmed in part; reversed in part.

HOWERTON and CHAPMAN, JJ., concur.