*In re* MARRIAGE OF T.H., Petitioner, and T.H., Respondent (R.F., Intervening Petitioner (*In re* D.H. *et al.*, Minors (J.C., Guardian *ad litem*, Petitioner; C.F., Intervening Petitioner; T.H., Respondent-Appellant); (*In re* Adoption of D.H. *et al.*, Minors (B.H. *et al.*, Petitioners; T.H., Respondent)))).

Fifth District   No. 5—92—0422

---

Opinion filed December 30, 1993.

John Long, of Troy, for appellant.

Jack Carey, of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

T.H. (father) appeals from a summary judgment entered by the circuit court of St. Clair County on May 28, 1992, which terminated his parental rights with respect to his two minor children, D.H. and G.H., and denied his motion to stay the proceedings to terminate his parental rights pending disposition of a petition filed by his brother and sister-in-law, B.H. and D.H., to adopt the children with father's consent. The summary judgment terminating the parental rights of father was based on a finding that father was an unfit person on the ground of depravity within the meaning of section 1 of the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501), in that he had been convicted of the murder of the mother of his children and been sentenced to a 55-year term of imprisonment, which the court found indicated the murder was accompanied by exceptionally brutal and heinous behavior demonstrating wanton cruelty. The court found that father suffered from an inherent deficiency of moral sense and rectitude showing depravity.

On April 16, 1991, father was convicted of the murder of T.H., his wife and the mother of his two children. On June 19, 1991, father was sentenced to a term of imprisonment of 55 years. Father's conviction and sentence have been affirmed by this court. *People v. H.* (5th Dist. December 14, 1993), No. 5—91—0560 (unpublished order under Supreme Court Rule 23 (134 Ill. 2d R. 23)).

At the time of the murder, the children, D.H. and G.H., were four years of age and four months of age, respectively. Father was arrested immediately after the murder. On the date of the murder, July 27, 1990, T.H.'s father, R.F., was awarded temporary custody of the two children.

On its own motion, the circuit court of St. Clair County appointed a guardian *ad litem* for the two children on October 10, 1990. On July 9, 1991, the children's guardian *ad litem* filed a petition pursuant to section 2—13 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 40, par. 802—13) to terminate father's parental rights with respect to the children, alleging that father is an unfit person within the meaning of section 1 of the Adoption Act. Ill. Rev. Stat. 1989, ch. 40, par. 1501.

On July 22, 1991, father's brother and sister-in-law, B.H. and D.H., filed a petition to adopt the two children. Attached to the peti-

tion was father's final and irrevocable consent to the adoption, but only by B.H. and D.H. The consent had been executed before a judge.

On April 14, 1992, C.F., the sister of the deceased mother, filed a petition to adopt the children asking that father's parental rights be terminated as he is an unfit person.

On March 20, 1992, the guardian *ad litem* filed a motion for summary judgment on his petition to terminate father's parental rights. Submitted therewith was a certified copy of the coroner's certificate of death of T.H., which established that she died of hemorrhagic shock as a consequence of a stab wound to the chest, and the transcript of the proceedings in the criminal trial of father for murder, as well as an authenticated copy of the sentencing order in that cause, which confirm that father was convicted of the first-degree murder of T.H. and sentenced to 55 years in the Department of Corrections. Also before the court was the presentence investigation report prepared in connection with father's sentencing for murder.

On May 7, 1992, father filed a petition to stay the proceedings to terminate his parental rights pending disposition of the petition for adoption filed by B.H. and D.H. with father's consent.

Father's motion to stay was denied, and the guardian's motion for summary judgment was granted, on May 28, 1992. On June 18, 1992, father filed his notice of appeal. On that same date, J.H., the paternal grandfather of the children and father of T.H., filed a petition to intervene for the purpose of filing a petition to adopt the children. On June 19, 1992, B.H. and D.H. filed a motion to voluntarily dismiss their petition for adoption.

What father seeks in this appeal is a reversal of the summary judgment terminating his parental rights and remand of this cause to the trial court with directions that it consider the petition to adopt filed by B.H. and D.H. with father's consent prior to the petition to terminate father's parental rights. It is obvious that father has sought in the trial court, and continues in this court to seek, to control the placement of his children with the adoptive parents of his choice rather than allow the court to choose the placement which is in the best interests of the children.

Father's first argument on appeal is that the trial court erred in disposing of the petition to terminate parental rights prior to considering the petition to adopt which was accompanied by the father's irrevocable consent to the adoption. In connection with this argument, father argues that we should consider the state of the record as it existed at the time his notice of appeal was filed, that is, prior to the filing of B.H. and D.H.'s motion to voluntarily dismiss their petition

to adopt. We find that whether we consider the motion to voluntarily dismiss the petition to adopt matters not to our disposition of this cause as we find no error in the trial court proceeding to hear the petition to terminate parental rights without first considering the petition to adopt.

In support of his argument that the trial court was bound to consider the petition to adopt prior to ruling on the petition to terminate parental rights, father relies exclusively on *In re Adoption of Smith* (1976), 38 Ill. App. 3d 217, 347 N.E.2d 292. We find only superficial similarities between the *Smith* case and the instant case and, like the trial court, find that "the factual situation in the *Smith* case is obviously distinguishable from the present case and is not controlling or dispositive of the issues present[ed] here."

In *Smith*, the minor child had been declared a neglected child and made a ward of the court. Custody of the child was given to the grandparents under the guardianship of the Department of Children and Family Services (DCFS). Thereafter, a great deal of conflict arose between the grandparents and DCFS. DCFS finally convinced the grandparents to allow placement of the child with what it called a "neutral" foster family while efforts continued to reunite the child with her natural parents. In fact, DCFS's placement of the child with the "neutral" foster family was actually for the purpose of concluding adoption with these foster parents. Accordingly, DCFS filed a petition to terminate the natural parents' rights, alleging that the grandparents had "abandoned" the child.

The grandparents immediately began adoption proceedings with the consent of the natural parents. Without notifying the grandparents, DCFS called its petition for hearing and obtained an order finding the natural parents unfit and appointing the administrator of DCFS guardian with power to consent to the adoption. The purpose of the order was to nullify the consents of the natural parents filed in the grandparents' adoption action. When the grandparents learned of the order, they filed a motion to vacate, which was granted.

Finally, the trial court held for DCFS and granted its petition to be appointed guardian with power to consent to the adoption of the child. The trial court found that adoption by the grandparents would not be in the best interests of the child, although it found the grandparents to be fit persons within the meaning of the Adoption Act.

The appellate court reversed, holding that where the valid consents of the natural parents to an adoption by related persons have been executed and filed and the adoptive petitioners are fit persons, there should be no occasion for subsequently inquiring in a juvenile

proceeding into the fitness of those natural parents; their residual parental rights have already been surrendered to the court by valid consents. (*Smith*, 38 Ill. App. 3d at 228, 347 N.E.2d at 301.) The court discussed the importance of maintaining the child's natural relationships and acknowledged the Adoption Act's recognition of the importance of natural relationships by its dispensing with many requirements applicable in nonrelated adoptions. (*Smith*, 38 Ill. App. 3d at 227-28, 347 N.E.2d at 300-01.) The court found that it is also the legislative purpose and policy of the Juvenile Court Act to strengthen the child's natural family ties whenever possible.

The court condemned the actions of DCFS in that case to frustrate proceedings for adoption by fit grandparents because of its belief that a different possible alternative was better, and the court stated that instead it is the Department's function to execute and enforce the public policy as defined by the legislature. (*Smith*, 38 Ill. App. 3d at 228, 347 N.E.2d at 301.) The court found that the allegation by DCFS that the grandparents had abandoned the child was manifestly untrue and should have been recognized as such by DCFS. The court found that DCFS had made repeated efforts to frustrate the grandparents' adoption proceeding by subsequent efforts to nullify the consents of the natural parents.

The court stated that DCFS cannot be permitted by proceedings under the Juvenile Court Act to stall and frustrate a timely petition by fit grandparents for custody and adoption. The court pointed out that it is an important responsibility of the courts to preclude public agencies from misusing powers granted by the legislature for the purpose of defeating legislative intent. *Smith*, 38 Ill. App. 3d at 230-31, 347 N.E.2d at 303.

The court concluded that the grandparents were fit persons within the meaning of the Adoption Act, that the consents of the natural parents were filed in proper form at a time when the right to consent was vested by law in the natural parents, and that the trial court erred in proceeding on the subsequent petition of DCFS to adjudicate the natural parents unfit and to vest power to consent to adoption in DCFS without first considering the pending adoption proceeding. *Smith*, 38 Ill. App. 3d at 231, 347 N.E.2d at 303.

We simply do not agree with father that the *Smith* case requires that a subsequently filed petition to adopt with consent of the natural parents must be heard before a previously filed petition to terminate the parental rights of the natural parents. Because the facts of the *Smith* case were so unique, and because the court relied on those unique facts in reaching its decision, we simply do not believe that

*Smith* can stand for any general rule of law with respect to the order of proceedings under the Adoption Act and the Juvenile Court Act.

In *Smith,* the petition to terminate parental rights was filed for the wrongful purpose of nullifying the already properly executed and filed consents of the natural parents to a related adoption. The appellate court based its decision in large part on the misconduct of DCFS in attempting to frustrate the adoption proceedings brought by the grandparents and the legislative policies of the Juvenile Court Act and the Adoption Act.

In the instant case, unlike in *Smith,* the petition to terminate parental rights was filed prior to the adoption petition. Indeed, it appears that the subsequent adoption petition was filed at least in part for the purpose of frustrating the efforts of the children's guardian *ad litem* to terminate the father's parental rights. Through the filing of the adoption petition with the consent of father to the adoption only by his brother and sister-in-law, father sought to circumvent the guardian's efforts to terminate his parental rights and to determine the placement of his children so that, presumably, he could maintain some contact and relationship with them. Although father is not a public agency, as is DCFS, we find his actions no less manipulative and repugnant than were those of DCFS in the *Smith* case.

■■ We find nothing in either the Adoption Act or the Juvenile Court Act which mandates that a subsequently filed petition to adopt with consent be heard prior to a previously filed petition to terminate parental rights. (See *In re C.R.* (1987), 164 Ill. App. 3d 142, 517 N.E.2d 622.) The guardian *ad litem*'s petition to terminate father's parental rights was filed prior to the adoption petition. It was not filed for the purpose of frustrating the related adoption. To the contrary, it appears that the adoption petition was filed for the purpose of frustrating the guardian's efforts to protect the best interests of the children.

Furthermore, in the instant case, there were multiple petitions for adoption filed. The overriding concern of both the Adoption Act and the Juvenile Court Act is the best interests of the child. (Ill. Rev. Stat. 1989, ch. 40, par. 1525; *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508-09, 427 N.E.2d 1231, 1235; *In re Gates* (1978), 57 Ill. App. 3d 844, 849, 373 N.E.2d 568, 573.) Where, as here, a petition to terminate parental rights is filed prior to any petition for adoption, and where there are multiple petitions for adoption subsequently filed, albeit one with parental consent, and where that natural parent has been convicted of the murder of the other natural parent, we find no error in the trial court proceeding on the petition to terminate paren-

tal rights prior to proceeding on the petitions to adopt. Indeed, we find this procedure to be in the best interests of the minor children for, upon a finding of unfitness, it leaves the court free to consider the competing petitions to adopt rather than being bound to consider only the petition accompanied by consent, and it allows the court to achieve the best possible result for the minor children. Finally, we find repugnant, as did the trial court, the idea that the person responsible for murdering the mother of these children, and who has been sentenced to a term of imprisonment of 55 years as a result, should be in a position to determine who shall care for the children during their minority.

Trial courts are afforded discretion in issuing stay orders. (*Couri v. Korn* (1990), 203 Ill. App. 3d 1091, 1094, 562 N.E.2d 235, 237.) We find no abuse of discretion in the trial court's denial of father's motion to stay the proceedings to terminate his parental rights pending disposition of the petition to adopt filed by B.H. and D.H. and proceeding on the petition to terminate parental rights before hearing the petition to adopt.

Father next argues that the termination of his parental rights based solely on the fact of his conviction violates the Federal constitutional prohibition against cruel and unusual punishment (U.S. Const., amends. VIII, XIV) and the Illinois constitutional prohibition against corruption of blood (Ill. Const. 1970, art. I, §11). We reject father's argument for several reasons. We point out initially that, by failing to raise these constitutional arguments before the trial court, father has waived them for purposes of appeal, and that the termination of father's parental rights was not based solely on his conviction but on a finding of unfitness grounded in depravity based on father's murder of the mother of his children in an exceptionally brutal and heinous manner indicating wanton cruelty.

■ The general rule in civil cases is that constitutional arguments which are not raised in the trial court are considered waived for purposes of appeal. (*Werner v. Botti, Marinaccio & DeSalvo* (1990), 205 Ill. App. 3d 673, 677, 563 N.E.2d 1147, 1151.) It is well settled that issues not raised in the trial court are waived and may not be raised for the first time on appeal (*In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill. 2d 555, 568, 524 N.E.2d 538, 543-44), and this rule applies to constitutional as well as to nonconstitutional issues. (*In re Marriage of Vest* (1991), 208 Ill. App. 3d 325, 329, 567 N.E.2d 47, 49.) At no time did father raise these constitutional arguments before the trial court, although he had the opportunity to do so. Accordingly, father has waived these issues for purposes of appeal.

In any event, father's parental rights were not terminated based solely on his conviction for murder. Father's parental rights were terminated based on a finding that he was an unfit person within the meaning of section 1 of the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501), because the murder of his children's mother in an exceptionally brutal and heinous way demonstrated his depravity. Section 2—29 of the Juvenile Court Act of 1987 provides for the termination of parental rights and appointment of a guardian with power to consent to adoption upon a finding, by clear and convincing evidence, that the natural parent is an unfit person as defined in the Adoption Act. (Ill. Rev. Stat. 1989, ch. 37, par. 802—29.) The Adoption Act defines an unfit person as any person whom the court shall find unfit to have a child, the grounds of such unfitness being, among others, the person's depravity. Ill. Rev. Stat. 1989, ch. 40, par. 1501.

A criminal conviction is neither necessary for a finding of unfitness based on depravity nor sufficient for a finding of unfitness based on depravity. (*In re Flynn* (1974), 22 Ill. App. 3d 994, 318 N.E.2d 105; *In re Sanders* (1979), 77 Ill. App. 3d 78, 84, 395 N.E.2d 1228, 1231.) In order to find a person unfit on the ground of depravity, the court must find that the person suffers from an inherent deficiency of moral sense and rectitude. (*In re Buttram* (1978), 56 Ill. App. 3d 950, 953-54, 372 N.E.2d 1135, 1138.) Depravity may be established by a series of acts or a course of conduct indicating a deficiency in a moral sense and showing either an inability or an unwillingness to conform to accepted morality. (*Buttram*, 56 Ill. App. 3d at 954, 372 N.E.2d at 1138.) However, the mere fact of a felony criminal conviction is not sufficient to justify a finding of depravity. *Sanders*, 77 Ill. App. 3d at 84, 395 N.E.2d at 1231.

In *In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915, our supreme court held that, while a single criminal conviction, without more, will not support a finding of unfitness based on depravity, there were three separate factors present in that case to demonstrate the father's depravity. First, the father had been convicted of murder, the most serious criminal offense. Second, the murder victim was the mother of the child. Finally, the murder was accompanied by exceptionally brutal and heinous behavior demonstrating wanton cruelty. The court held that these three factors, taken together, establish that the father suffered from an inherent deficiency of moral sense and rectitude showing depravity. The supreme court further found, upon taking judicial notice of the report of proceedings in the murder prosecution, that that record convincingly demonstrated that defendant was an unfit person by reason of depravity.

Similarly, in the instant case the trial court had before it the report of proceedings of defendant's murder trial. The trial court's order recites that the court had read the entire report of proceedings and that it left no genuine issue of material fact as to whether father is an unfit person. As in *Abdullah,* the trial court found that father had not only committed murder but that the victim of the murder was the mother of his children and that the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. The court found that father suffers from an inherent deficiency of moral sense and rectitude showing depravity. Thus, the termination of father's parental rights was not based solely on his conviction but was based on a finding of unfitness grounded in depravity, as provided in the Adoption Act. That one of the facts considered in reaching this finding of unfitness was father's criminal conviction does not render the termination of his parental rights based on the finding of unfitness unconstitutional as either cruel and unusual punishment or as corruption of blood. Father's argument that termination of his parental rights based solely on his conviction is unconstitutional must, therefore, fail.

Furthermore, with respect to father's argument that termination of his parental rights constitutes cruel and unusual punishment in violation of the Federal constitutional proscription, it seems apparent to us that termination of father's parental rights was not penal in nature and therefore does not constitute cruel and unusual punishment. A law is deemed penal in nature if it imposes a disability for the purpose of punishment, for example, to reprimand the wrongdoer or to deter others. (*Trop v. Dulles* (1958), 356 U.S. 86, 96, 2 L. Ed. 2d 630, 639-40, 78 S. Ct. 590, 595.) A law is considered to be nonpenal if it imposes a disability not to punish but to accomplish some other legitimate governmental purpose. *Trop,* 356 U.S. at 96, 2 L. Ed. 2d at 640, 78 S. Ct. at 595-96.

It seems clear to us that the purpose of the statute allowing termination of parental rights based on a finding of depravity is not to punish the parent for a criminal act but to protect and safeguard the welfare of children. The trial court did not terminate father's parental rights in the instant case as a punishment for his conviction for murder but to protect the best interests of the minor children.

Father also asks us to hold that termination of his parental rights based solely on his conviction violates the Illinois constitutional proscription against corruption of blood. Neither party directs us to any case wherein this constitutional provision has been construed to include parental rights or interests, nor has our research discovered

any. It appears that this constitutional prohibition has been applied only to traditional property rights. Father asks us to extend the interpretation of this constitutional provision to include the loss of parental rights or interests. In light of what we have hereinabove held regarding father's constitutional arguments, we decline to further address this argument as it is apparently one of first impression. Courts of review will decide constitutional questions only where resolution of those questions is essential to disposition of the appeal. (*Werner v. Botti, Marinaccio & DeSalvo* (1990), 205 Ill. App. 3d 673, 677, 563 N.E.2d 1147, 1151.) This is not such a cause.

Father next argues that the trial court erred in concluding that *In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915, was controlling and dispositive of the motion for summary judgment. Father argues that *Abdullah* is distinguishable in several respects from the case at bar and therefore does not control the case at bar. We have already discussed the facts of *Abdullah* herein and will not repeat them.

Father first points out that in *Abdullah* the parent had exhausted all of his State appeals from his criminal conviction whereas in the instant case father has not exhausted the State appellate process. We note, however, that father's criminal conviction was affirmed by this court subsequent to the oral argument in the instant case. (*People v. H.* (5th Dist. December 14, 1993), No. 5—91—0560 (unpublished order under Supreme Court Rule 23).) Father argues that it is precipitous to terminate his parental rights on the basis of a conviction which might be overturned on appeal.

■ The parent in *Abdullah* made an argument similar to that made by father in the instant case. In *Abdullah*, as here, the parent argued that his murder conviction might be reversed, thus totally impeaching the adoption proceeding, and assuming no reconviction upon retrial, justice would require that he regain his son. Our supreme court acknowledged the dangers of relying on a conviction that is not yet final but held that the interests of finality and judicial economy require that at some point a line must be drawn after which it is proper to use a conviction. (*Abdullah*, 85 Ill. 2d at 310, 423 N.E.2d at 919.) It is true that in *Abdullah* the parent had exhausted all of his State appeals, while in the instant case, father has exhausted only the first level of the appellate process. However, now that this court has affirmed father's conviction, the likelihood that his conviction will yet be reversed is slight. The evidence relied upon in the trial court is to this point unimpeached, and the finding of father's parental unfitness is unshaken. The interests of justice and judicial economy, as well as the best interests of the minor children involved in this case, favor

proceeding to terminate father's parental rights prior to the exhaustion of all of his appeal rights. Therefore, *Abdullah* is not sufficiently distinguishable from the case at bar in this respect as not to constitute controlling authority.

Father also argues that *Abdullah* is distinguishable in that in that case the parent was sentenced to a statutory extended term of imprisonment pursuant to section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2), whereas in the instant case the father was sentenced to a nonextended term of imprisonment. In *Abdullah*, the parent was apparently sentenced to an extended term of imprisonment based upon the statutory aggravating factor set forth in section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2)), that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. In the instant case, argues father, the trial court erroneously assumed that father had been sentenced to a statutory extended term of imprisonment when in fact he had not, and the court therefore erred in inferring that the murder was accompanied by exceptionally brutal and heinous behavior demonstrating wanton cruelty.

In *Abdullah*, one of the factors on which the court relied in finding depravity was that the parent had been sentenced to an extended-term sentence, from which it inferred that the murder had been accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. However, it is important to note that it was not the extended-term sentence itself which indicated depravity but the fact that the murder was committed in an exceptionally brutal or heinous fashion. Indeed, in its opinion in *Abdullah*, the supreme court indicated that it had relied not only on the imposition of the extended-term sentence to find that the murder had been accompanied by exceptionally brutal and heinous behavior but also on the factual basis for the extended-term sentence contained in the record of the parent's murder trial. *Abdullah*, 85 Ill. 2d at 311, 423 N.E.2d at 920.

■ Although in the instant case father was not sentenced to an extended-term sentence, this does not preclude a finding, based on the transcript of father's murder trial which was before, and considered by, the trial court, that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The imposition of an extended-term sentence remains discretionary even upon a finding that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b).) Whether the trial court relied

upon this transcript in finding that the murder was accompanied by exceptionally brutal or heinous behavior, or erroneously inferred the finding from its mistaken belief that father had been sentenced to an extended term, we may affirm the trial court on any basis appearing in the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) It is the judgment and not what else may have been said by the trial court that is on appeal to a court of review. (*Material Service Corp.*, 98 Ill. 2d at 387, 457 N.E.2d at 12.) We have reviewed the report of proceedings of father's murder trial, as did the trial court, and we conclude that those transcripts support a finding that the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Accordingly, *Abdullah* is not distinguishable from the instant case on this basis, and we find that it was, indeed, controlling and dispositive of the issue before the trial court.

Finally, father contends that his unfitness was not proved by clear and convincing evidence because the only evidence before the trial court was evidence relating to his criminal conviction, which is constitutionally inadequate to prove unfitness because reliance thereon constitutes cruel and unusual punishment. Father argues that there was no evidence before the trial court concerning his direct treatment of his children or his behavior in their presence. Father argues that, because the only evidence of his unfitness, that is, his criminal conviction, was constitutionally inadequate to prove his unfitness by clear and convincing evidence, the order of the trial court terminating his parental rights must be reversed. Father argues that the supreme court's holding in *Abdullah* that evidence of a criminal conviction is sufficient to establish unfitness violates the Federal constitutional guarantee of due process.

█ Again, we disagree with father that his parental rights were terminated solely on the basis of his criminal conviction or that *Abdullah* holds that a criminal conviction alone is sufficient to justify termination of parental rights. Father's parental rights were terminated based on a number of factors, including his murder of the mother of his children in an exceptionally brutal and heinous fashion, which murder was proved through evidence of his conviction and sentence therefor. Our supreme court held in *Abdullah* that the murder of a parent of one's children in an exceptionally brutal and heinous fashion, if proved by clear and convincing evidence, is sufficient to support a finding of unfitness based on depravity under section 1 of the Adoption Act. (Ill. Rev. Stat. 1989, ch. 40, par. 1501.) We find no violation of the constitutional guarantee of due process here where fa-

ther's depravity was proved by clear and convincing evidence of his murder of the mother of his children in an exceptionally brutal and heinous fashion and his sentence to a 55-year term of imprisonment.

For the foregoing reasons, we affirm the order of the circuit court of St. Clair County denying father's motion to stay proceedings on the petition to terminate his parental rights and granting summary judgment terminating father's parental rights to his two children.

Affirmed.

LEWIS, P.J., and GOLDENHERSH, J., concur.