NOTICE

Decision filed 10/31/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0294

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* TAYLOR D., a Minor | ) Appeal from the |
| | ) Circuit Court of |
| (The People of the State of Illinois, | ) Jefferson County. |
| | ) |
| Petitioner-Appellee, | ) No. 04-JA-15 |
| | ) |
| v. | ) |
| | ) |
| Anna D., | ) Honorable |
| | ) James M. Wexstten, |
| Respondent-Appellant). | ) Judge, presiding. |

_____

JUSTICE McGLYNN delivered the opinion of the court:

Taylor D. was taken into protective custody the day after the Jefferson County State's Attorney's office filed a juvenile abuse case against Anna D. (the respondent), who is Taylor's mother. More than a year later, the State filed a "Motion for Termination of Parental Rights and for Appointment of Guardian with Power to Consent to Adoption." On the first day of the termination hearing, the respondent executed a "Final and Irrevocable Consent to Adoption by Specified Person or Persons," seeking to have Taylor placed with relatives. The court proceeded with the termination proceeding and granted the State's motion. The respondent's parental rights were terminated, and the Department of Children and Family Services (DCFS) was granted the power to consent to an adoption. The respondent appeals.

Statement of Facts

Taylor was born on May 13, 2003. On March 15, 2004, the Jefferson County State's Attorney's office filed a petition in Taylor's interest. The petition alleged neglect by Taylor's mother. Taylor's father is unknown and has been found unfit by default. The respondent had

1

been diagnosed with bipolar disorder and posttraumatic stress disorder, making it necessary for her to take medication. When the respondent did not take her prescribed medication, she exhibited violent, erratic behavior, thus putting Taylor at risk of harm. On March 16, 2004, after a shelter care hearing, Taylor was taken into protective custody. When Taylor was 10 months old, she was placed with foster parents, with whom she has remained.

The court ordered that the respondent comply with certain recommendations before Taylor would be reunited with her. The respondent was to keep all her doctor appointments, take medication prescribed to control her behavior, comply with counseling, and establish and maintain a safe and suitable home environment. After more than a year of unsatisfactory progress on the part of the mother, the State filed a "Motion for Termination of Parental Rights and for Appointment of Guardian with Power to Consent to Adoption" on November 3, 2005.

The first day of the hearing on the motion to terminate parental rights was February 24, 2006. On the same day, the respondent executed a "Final and Irrevocable Consent to Adoption by Specified Person or Persons," in which she sought to consent to the adoption of Taylor by her brother and his wife. One week prior, on February 17, 2006, the respondent had filed a "Motion for Custody with the Minor's Uncle."

Although Taylor's aunt and uncle never appeared in court, a letter was sent by them to the court on March 28, 2006, expressing their desire to adopt Taylor. They indicated in the letter that they were employed, that their home was laid out so that Taylor could have her own room, and that they had submitted themselves to all the requirements of Lutheran Child and Family Services.

The State objected to the mother's ability to consent to an adoption, and the court set the matter for a hearing so that each side could present argument on the issue of the mother's ability to control the selection of the adoptive parents of her child.

2

The State argued that the respondent's motion and attempts to direct her consent to Taylor's uncle were inappropriate because Taylor "is a ward of [the] Court and her mother did not have the right to place her at this time" and because "the issue of placement [is] most appropriately decided at the best interest portion of the hearing."

Here, the respondent executed her consent to adopt on the same day her parental rights were to be terminated. The circuit court did not strike her motion, nor did it stay the proceedings due to the motion. Instead, the court gave the respondent the opportunity to consent, finding that her consent would not limit who could petition for an adoption or confine the court regarding to whom it granted the actual power to consent to an adoption. The court proceeded and found the respondent unfit. At the "best interests" portion of the hearing on May 16, 2006, the State presented evidence that Taylor was doing well in her foster home and that it was in the best interests of Taylor to be adopted by her foster parents. Accordingly, the court granted the State's motion to terminate parental rights and appointed DCFS as the guardian, with the power to consent to an adoption.

The respondent filed a notice of appeal with the Jefferson County circuit clerk on June 9, 2006.

Issue

The issue before this court is whether a mother can control the selection of the adoptive parents of her child by executing a final and irrevocable consent to adoption by a specified person or persons when that child is a ward of the court. The respondent argues that she has this right by statute and that the trial court erred in proceeding with the State's motion for the termination of parental rights and for the appointment of a guardian with the power to consent to an adoption, after her directed-consent documents had been filed.

This issue directly involves a question of law, the proper interpretation of a statute, and thus we apply *de novo* review without affording any deference to the trial court's

3

decision. See *In re Adoption of L.R.B.*, 278 Ill. App. 3d 1091, 1093, 664 N.E.2d 347, 348 (1996).

The respondent argues the trial court erred in proceeding with the State's termination motion and granting the power to consent to an adoption to DCFS when she had executed a final and irrevocable consent to adoption by a specified person or persons. The respondent argues that as a biological parent, she retains the right to consent to an adoption until those rights are terminated. The respondent urges that section 1-3(13) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-3(13) (West 2004)) specifically lists "the right to consent to adoption" as a parental right remaining with the parent even after the transfer of the legal custody or guardianship of the child. The respondent's assertion is true, but this right is limited by statute.

The respondent is correct in stating that when a child is found to be neglected and placed under guardianship, a parent retains the residual right to consent to an adoption. See 705 ILCS 405/1-3(13) (West 2004). However, this residual power is limited by the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2004)) to ensure that the best interests of the child are served.

Adoption Act

A parent's consent to an adoption is void and of no legal effect if the child is not available for adoption in the manner sought by the parent. Under the Adoption Act, Taylor was not available for adoption by the respondent's brother without the consent of DCFS and because the respondent's brother did not have the custody of Taylor. The Adoption Act defines "available for adoption" as follows:

"A person is available for adoption when the person is:

(a) a child who has been surrendered for adoption to an agency and to whose adoption the agency has thereafter consented;

4

(b) a child to whose adoption a person authorized by law, other than his parents, has consented, or to whose adoption no consent is required pursuant to Section 8 of this Act;

(c) a child who is in the custody of persons who intend to adopt him through placement made by his parents;

(c-1) a child for whom a parent has signed a specific consent pursuant to subsection O of Section 10;

(d) an adult who meets the conditions set forth in Section 3 of this Act; or

(e) a child who has been relinquished as defined in Section 10 of the Abandoned Newborn Infant Protection Act." 750 ILCS 50/1(F) (West 2004).

Taylor was not available for adoption under any of these subsections. When a child is under DCFS guardianship and in a foster home, the only way that child may be adopted by a noncustodial relative through parental consent is under section 1(F)(c-1) of the Adoption Act (750 ILCS 50/1(F)(c-1) (West 2004)), which refers to the requirements set forth in section 10(O) of the Adoption Act (750 ILCS 50/10(O) (West 2004)).

Under section 10(O)(1) of the Adoption Act, a parent of a child whose interests are the subject of a pending petition under section 2-13 of the Juvenile Court Act (705 ILCS 405/2-13 (West 2004)) may, with the approval of DCFS, execute a consent to an adoption by a specified person or persons:

"(a) in whose physical custody the child has resided for at least 6 months; or

(b) in whose physical custody at least one sibling of the child who is the subject of this consent has resided for at least 6 months, and the child who is the subject of this consent is currently residing in this foster home; or

(c) in whose physical custody a child under one year of age has resided for at least 3 months." 750 ILCS 50/10(O)(1) (West 2004).

Taylor was not available for an adoption by the persons to whom the respondent directed her consent. This consent is void because it seeks to authorize an unlawful act, and the court was correct in proceeding with the motion to terminate parental rights.

The State directs us to other cases that have held that even when an unfit parent has signed a consent to the adoption of a child by some relative, a trial court may still proceed to terminate parental rights. *In re Adoption of C.D.*, 313 Ill. App. 3d 301, 315-16, 729 N.E.2d 553, 564-65 (2000); *In re Adoption of L.R.B.*, 278 Ill. App. 3d 1091, 1093-94, 664 N.E.2d 347, 348-49 (1996); *In re Marriage of T.H.*, 255 Ill. App. 3d 247, 253-54, 626 N.E.2d 403, 408 (1993); *In re C.R.*, 164 Ill. App. 3d 142, 146-47, 517 N.E.2d 622, 625-26 (1987).

In the *In re C.R.* case, the court held that an order terminating parental rights does not contemplate the survival of any residual rights in the natural parents. *In re C.R.*, 164 Ill. App. 3d at 146, 517 N.E.2d at 625. The parents in that case argued that the court did not have the authority to terminate parental rights or to appoint a guardian with the power to consent to an adoption because no petition for an adoption had been previously filed. *In re C.R.*, 164 Ill. App. 3d at 143, 517 N.E.2d at 623. Not only did the court disagree with this assertion, but the court stated that there was nothing in the Juvenile Court Act that requires that the parents be advised of their right to consent or be given the opportunity to consent. *In re C.R.*, 164 Ill. App. 3d at 147, 517 N.E.2d at 626. While this case is not directly on point, it supports the argument that a termination proceeding will not be put on hold so that a parent can direct the placement of his or her children.

Our later decision in *In re Marriage of T.H.* held that a trial court could terminate parental rights, even though the parent had signed a consent to an adoption, when the trial court's ruling was in the best interests of the children. *In re Marriage of T.H.*, 255 Ill. App. 3d at 253-54, 626 N.E.2d at 408. The respondent argues that the case is distinguishable because the facts are "drastically different." That may be, but the legal situations are the

6

same. A parent in each case sought to stay termination proceedings by signing a consent to an adoption by the parent's brother. In *In re Marriage of T.H.* the court found that the signed consent did not stay the termination proceeding, especially because this procedure "leaves the court free to consider the competing petitions to adopt rather than being bound to consider only the petition accompanied by [parental] consent, and it allows the court to achieve the best possible result for the minor children." *In re Marriage of T.H.*, 255 Ill. App. 3d at 254, 626 N.E.2d at 408.

The ruling of the Fourth District in the *In re Adoption of L.R.B.* case established that a parent whose parental rights are about to be terminated may not execute consents in favor of relatives in an attempt to control the placement of the parent's children and to prevent the court from choosing the placement which the court believes is in the best interests of the children. *In re Adoption of L.R.B.*, 278 Ill. App. 3d at 1094, 664 N.E.2d at 348-49. The court in *In re Adoption of L.R.B.* found that the residual right to consent listed in section 1-3(13) of the Juvenile Court Act (705 ILCS 405/1-3(13) (West 1994)) did not grant an affirmative right but simply makes clear that the right to consent belongs not to the legal guardian or custodian but to the parent until parental rights are terminated. *In re Adoption of L.R.B.*, 278 Ill. App. 3d at 1094, 664 N.E.2d at 349. As in the case at hand, the rights of the parent had not been terminated in *In re Adoption of L.R.B.* when the consent was executed. The child there was also a ward of the court, and the court found that the child was not available for an adoption by the persons the parent preferred. *In re Adoption of L.R.B.*, 278 Ill. App. 3d at 1093-94, 664 N.E.2d at 348. We agree that the Adoption Act provides parents with some control over the adoption of their children through a private placement. This control exists to the extent the child is available for an adoption in the manner sought by the parent under the limitations imposed by the Adoption Act and the statute's goal of doing what is in the best interests of the child.

A later decision of the Fourth District applied the Adoption Act's limitations to find that a parent's consent in favor of a grandparent was invalid since the child was a ward of the court and the grandmother did not have custody as required by section 10(O)(1) of the Adoption Act. *In re Adoption of C.D.*, 313 Ill. App. 3d 301, 315-16, 729 N.E.2d 553, 564-65 (2000).

The respondent's argument, centered on the residual right to consent to an adoption found in section 1-3(13) of the Juvenile Court Act without regard to the limitations imposed on this right, including the goal of achieving the best interests of the child, is an argument this court is not inclined to follow. This residual power to consent does not necessarily lead to an adoption as sought by the parent(s). Even when parents have consented to an adoption of a child, a judge may approve that adoption only after finding that it is in the child's best interests. *Nees v. Doan*, 185 Ill. App. 3d 122, 126, 540 N.E.2d 1046, 1048 (1989); *In re Adoption of Lucas*, 87 Ill. App. 3d 1100, 1104, 409 N.E.2d 521, 524 (1980); 750 ILCS 50/15 (West 2004). Accordingly, the trial judge was correct in proceeding with the pending motion to terminate parental rights and was not required to stay that proceeding because of the consent executed by the respondent. The consent was properly dealt with at the "best interests" hearing and was properly dismissed because it sought the adoption of Taylor in a manner in which Taylor was not available to be adopted under the Adoption Act.

The result reached in this case is consistent with Illinois precedent and achieves the goals sought by the Adoption Act and the Juvenile Court Act. The respondent's consent might have been honored had it not been repugnant to statute and had her parental rights not been terminated. The best interests of Taylor have been served because she remains with foster parents who have cared for her nearly all of her life and who are known to her as Mom and Dad. Once a child has been made a ward of the court, the ability of a parent to control the adoption of his or her child is limited by the requirements imposed to serve the best

8

interests of the child.

Conclusion

The judgment of the circuit court of Jefferson County is affirmed.

Affirmed.

CHAPMAN and DONOVAN,[1] JJ., concur.

---

Justice Donovan joined the panel after the death of Justice Hopkins.