**In the Matter of the ADOPTION OF R.S., a minor child.**

**S.S. and J.S., Petitioners.**

No. S–7296.

Supreme Court of Alaska.

Dec. 6, 1996.

William T. Ford, Anchorage, for Appellant.

Mary Ellen Ashton, Ashton & Dewey, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

FABE, Justice.

### I. INTRODUCTION

R.F. appeals the superior court's decision to terminate his parental rights under AS 25.23.180(c)(2) and waive his consent to the adoption of his son, R.S. We affirm.

### II. FACTS AND PROCEEDINGS

R.S. was born June 22, 1991, in Olympia, Washington. His mother, B.F., and his father, R.F., were not married or living together when R.S. was born. B.F.'s parents, S.S. and J.S., helped her to care for R.S. and her daughter from a previous marriage, N.B.

The record suggests that R.F. was violent and assaultive toward B.F. In May 1992 B.F. petitioned for a protective order against

R.F., claiming that he punched her in the face when she was pregnant with R.S. In January 1993 B.F. and R.F. married. On June 14, 1993, B.F. again filed for a protective order, alleging that R.F. had threatened her life and assaulted her and the children.

On July 19, 1993, B.F. was murdered. In November 1993 a Washington State court convicted R.F. of the murder and sentenced him to serve a term of sixteen years and eight months with no parole eligibility.[1] R.F. is scheduled to be released from prison in the year 2010, at which time R.S. will be an adult. At his sentencing, the court also ordered that R.F. have no contact with R.S. unless permitted by a future court order.

R.F. appealed both his conviction and the enhanced sentence he received. On May 1, 1995, the Washington Court of Appeals affirmed the judgment and sentence of the trial court. R.F. then filed a motion for a new trial, alleging ineffective assistance of counsel at his first trial. The King County Superior Court denied this motion on June 9, 1995. R.F. has filed notice of appeal of this decision to the Washington Court of Appeals.

R.S. has both physical and emotional problems and will require significant medical treatment throughout his minority. He is of low average intelligence and needs remedial teaching due to neurological and emotional difficulties. R.S. also has hearing loss and speech delays due to ear damage and attends speech therapy four to five times a week. R.S. needs stability in his life to help him to overcome his medical difficulties.

After R.F. was convicted and sentenced for B.F.'s murder, B.F.'s parents, S.S. and J.S., traveled to Washington and brought R.S. and N.B. to Anchorage. They filed guardianship cases for the children in September 1993. When they learned, however, that J.S.'s retirement benefits from the U.S. Air Force would not provide medical coverage for the children unless S.S. and J.S. adopted them, they filed adoption petitions for both children on February 28, 1994. S.S. and J.S. were granted custody of both children on March 3, 1994, and N.B.'s adoption was finalized in April 1994. However, R.F. opposed R.S.'s adoption, alleging that he had not exhausted his post-conviction remedies and that the adoption was not in the best interests of the child. S.S. and J.S. filed a motion to waive R.F.'s consent on August 12, 1994, and a petition to terminate his parental rights on September 13, 1994.

A trial was held before Superior Court Judge Larry D. Card on July 10 and 11, 1995. The court reviewed the Washington trial court's denial of R.F.'s motion for a new trial and found that "he has . . . a very slight, if any—a minimal chance of prevailing on any further appeals and therefore, this court is not willing to withhold the rights of [S.S. and J.S.] to adopt this child and for the child to have all the rights associated with being adopted." Relying on AS 25.23.180(c)(2), which provides for termination of parental rights "on the grounds that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interests of the child," the trial court made the following findings:

15. The evidence is clear and convincing that [R.F.] does not have custody of [R.S.] and will be incarcerated until [R.S.] is an adult.

16. The evidence is clear and convincing that it is in the child's best interest to be adopted by [S.S. and J.S.].

17. The evidence is clear and convincing that [R.F.'s] withholding of his consent to the . . . adoption is unreasonable in these circumstances.

---

1. R.F. received an enhanced sentence for his conviction of second degree murder, based on the aggravating factor of "impact to others." In this regard, the superior court entered the following written findings and conclusions:

> At the time [B.F.] was killed, her 7–year old daughter [N.B.] was present and watched as her mother was beaten to death. The defendant knew his daughter was present in the house at the time because he was caring for her at the time. [N.B.] is still traumatized by this event to a great extent.
> The fact that [N.B.] was present at the house and watched as her mother was beat [sic] to death is sufficient justification for a sentence outside the standard range. The crime was of a destructive nature not normally associated with the crime of murder 2. The impact of this crime on [N.B.] and [R.S.] was foreseeable to the defendant.

Based upon these findings, the court terminated R.F.'s parental rights to R.S.

As an alternative ground for waiving R.F.'s consent to the adoption, the trial court found that R.F. had constructively abandoned R.S. by murdering R.S.'s mother. Alaska Statute 25.23.050(a)(1) provides that consent to adoption is not required of a parent who has abandoned a child for a period of at least six months. The court reasoned that R.F.'s willful act deprived R.S. of his mother and made any meaningful relationship with his father during his minority impossible. The court also noted that despite his many criminal appeals supported by a $75,000 legal defense fund, R.F. had neither paid child support nor petitioned the court to be allowed contact with R.S. The trial court terminated R.F.'s parental rights and granted the petition of S.S. and J.S. to adopt. This appeal followed.

## III. *DISCUSSION*[2]

*The Superior Court Relied on AS 25.23.180(c)(2) to Terminate R.F.'s Parental Rights.*

 Alaska Statute 25.23.180(c)(2) provides:

(c) The relationship of parent and child may be terminated by a court order issued in connection with a proceeding under this chapter or a proceeding under AS 47.10:

. . . .

(2) on the grounds that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interest of the minor child. . . .

R.F. disputes the superior court's finding that he did not have custody of R.S. at the time he withheld consent to the adoption petition. He contends that as R.S.'s natural father he was automatically entitled to custody of R.S. upon his wife's death in July 1993. He claims that he retained custody of R.S. until the superior court terminated his parental rights and granted the petition for adoption of R.S. in July 1995. R.F. concludes that because he had legal custody of R.S.

when he withheld consent to the adoption petition in April 1994, the superior court erred in terminating his parental rights under AS 25.23.180(c)(2).

The term "custody" does not have a fixed legal meaning. *Delgado v. Fawcett,* 515 P.2d 710, 712 (Alaska 1973). " 'Custody' pertains not only to the parental control of the child, but is inseparably linked to the parent's rights of access and companionship with his offspring." *Id.* at 713. Custody embraces the sum of parental rights respecting the rearing of the child, including its care, the right to direct the child's activities, and to make decisions concerning the education, health, and religion of the child. Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 20.2, at 481 (2d ed. 1987).

The trial court found that R.S.'s grandparents, S.S. and J.S., have had physical custody of R.S. since the murder of his mother in July 1993. They have cared for him and made all of the significant decisions affecting his life. The trial court further found that on March 3, 1994, S.S. and J.S. were granted custody pending adoption of R.S. The superior court's determination that R.F. was "a parent who does not have custody" under AS 25.23.180(c)(2) was not clearly erroneous.

 R.F. also argues that he has not unreasonably withheld his consent to the adoption. R.F. maintains that he is innocent of B.F.'s murder and was convicted only because he received inadequate representation during his trial. Despite the fact that R.F.'s conviction and sentence have been upheld by the Washington Court of Appeals, and his subsequent motion for a new trial has been denied by the trial court, he contends that his refusal to consent to the adoption of his son is not unreasonable. He argues that the court should not consider terminating his parental rights until after the Washington Court of Appeals decides his appeal of the denial of his motion for a new trial. However, R.F. also raises the possibility of appealing the denial of his motion for a new trial to the Washington Supreme Court.

---

**2.** We review the trial court's underlying factual findings and decision to terminate parental rights under the "clearly erroneous" standard and reverse only if "left with the definite and firm conviction that a mistake has been made." *E.J.S. v. State, Dept. of Health & Social Servs.,* 754 P.2d 749, 750 n. 2 (Alaska 1988) (quoting *E.A. v. State,* 623 P.2d 1210, 1212 (Alaska 1981)).

In determining whether termination of parental rights and waiver of consent to adoption are proper, the best interests of the child are paramount. The Alaska adoption statute states that it "shall be liberally construed to the end that the best interests of adopted children are promoted. Due regard shall be given to the rights of all persons affected by a child's adoption." AS 25.23.005. Alaska Statute 25.23.180(c)(2) permits termination of parental rights if a parent who does not have custody unreasonably withholds consent to the adoption of his child "contrary to the best interests of the child."

Although we have not previously addressed the issue, other courts have held that where one parent kills another, the best interests of the child outweigh the parent's right to prevent adoption after the parent's conviction has been affirmed in a merit appeal. *See, e.g., In re Abdullah,* 85 Ill.2d 300, 53 Ill.Dec. 246, 250, 423 N.E.2d 915, 919 (1981); *In re C.M.J.,* 278 Ill.App.3d 885, 215 Ill.Dec. 487, 492, 663 N.E.2d 498, 503 (1996).

In *In re Abdullah,* the Illinois Supreme Court upheld the termination of appellant's parental rights for "depravity" after his conviction for murdering his child's mother had been affirmed on one appeal. 53 Ill.Dec. at 251, 423 N.E.2d at 920. In that case, the appellant contended that the court should not rely on his conviction for murdering his wife as evidence in terminating his parental rights because the conviction might be overturned on appeal. *Id.* 53 Ill.Dec. at 250, 423 N.E.2d at 919. However, the appellant's conviction had been affirmed by the Appellate Court of Illinois and his petition for appeal to the Illinois Supreme Court had been denied. The Illinois Supreme Court acknowledged the "dangers of relying on a conviction that is not yet final" but reasoned that "the interests of finality and judicial economy require that at some point a line must be drawn, after which it is proper to use the conviction." *Id.* The court held that the most important consideration was the child and that further delay in the disposition of the case was not in the child's best interest. *Id.* 53 Ill.Dec. at 251, 423 N.E.2d at 920.

In a similar case, the Appellate Court of Illinois reasoned that although the appellant had exhausted only the first level of the appellate process, the likelihood that his conviction would be reversed was slight. *In re Marriage of T.H.,* 255 Ill.App.3d 247, 193 Ill.Dec. 370, 378, 626 N.E.2d 403, 411 (1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994). Based upon the appellant's slim chance of prevailing, the court in *T.H.* reasoned that the best interests of the child required a termination of the father's parental rights prior to exhaustion of his post-conviction appeals. *Id.* 193 Ill.Dec. at 378, 626 N.E.2d at 411.

The trial court found that R.S. has serious medical needs that can be fully addressed only if he has both the support and stability of a permanent family. The court relied on the opinion of Dr. Henderson–Dixon, a clinical psychologist who examined R.S., that "[a]nything that can be done to facilitate [R.S.'s] stability and feelings of security should be expedited. This would seem to include his adoption by his maternal grandparents." The court was also aware that his grandparents could provide the significant medical care that R.S. will need throughout his minority. To postpone R.S.'s opportunity to improve his condition is clearly not in his interest.

R.F.'s conviction and sentence have been affirmed by the Washington Court of Appeals. His motion for a new trial has been denied by the Washington trial court. The Alaska superior court found that R.F. has only a slight chance of prevailing on any further appeals. To leave a child in limbo during his formative years based upon the slim chance that R.F. may prevail on one of his many possible post-conviction relief measures contravenes the primary purpose of Alaska's adoption statute: to advance the best interests of the child. AS 25.23.005.

Based upon the evidence presented at trial, the trial court concluded that the benefit to R.S. of adoption by his grandparents, S.S. and J.S., strongly outweighed R.F.'s interest in waiting until after further post-conviction appeals have been heard. We hold that the trial court did not err in finding that R.F.'s refusal to consent to the adoption was unrea-

sonable and contrary to R.S.'s best interests.[3] Termination of R.F.'s parental rights dispenses with the requirement that he consent to R.S.'s adoption. AS 25.23.180(d)(1).

## IV. CONCLUSION

We AFFIRM the superior court's decision to terminate R.F.'s parental rights on the ground that he unreasonably withheld consent to the adoption and the court's waiver of his consent to adoption.

3. Based on our resolution of this issue, we need not reach the issue of constructive abandonment.