Sharen RICHARDSON, Appellant,

v.

Kenneth KOHLIN, Appellee.

No. S–12217.

Supreme Court of Alaska.

Jan. 18, 2008.

Michael B. Logue, Gorton, Logue, & Graper, Anchorage, for Appellant.

Ann DeArmond, Sterling & DeArmond, P.C., Wasilla, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

After being laid off from a high paying job as an IBEW journeyman electrician in Anchorage, a non-custodial father moved to the Pacific Northwest. There, despite months of trying to find work in Oregon and Washington, he was unable to secure work as an electrician. He then sought to modify the child support order that the court had en-

tered shortly after his move which had been based on his prior income. The superior court determined that the father's new income as a full-time non-union site-service technician in Washington represented a material change in circumstances. The court also determined that child support should not be based on the father's potential income working in Alaska because, considering the totality of the circumstances, he was not unreasonably underemployed. Because the superior court correctly determined that there had been a material change in the father's circumstances, and because there was an adequate basis for the superior court not to impute income, we affirm these decisions of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

Sharen Richardson and Kenneth Kohlin divorced in October 1996. They are the parents of a daughter born in May 1994. In the years since the divorce, custody and support have been modified numerous times. In the spring of 2004 Kenneth was living in Anchorage, where Sharen also lives. Kenneth, a member of the IBEW union, was employed as a journeyman electrician by Alcan Electric and worked on the Anchorage airport project. At that time Kenneth made around thirty-one dollars per hour. His May 2004 financial affidavit to the court reflected a gross annual income of $68,886 and a net income for child support purposes of $48,225.

While Kenneth was in Anchorage he had physical custody of his daughter forty-one percent of the time. The custody battles between Kenneth and Sharen in advance of fall 2004 proved quite contentious, including an ex parte domestic violence order that Sharen obtained against Kenneth on their daughter's behalf. Both parents acknowledged that the custody disputes and transitions were hard on their daughter.

During the summer of 2004 Kenneth learned that the airport job was coming to an end and that he would be subject to a reduction in force. He was later laid off from the job. Despite his knowledge of his tenuous employment situation, Kenneth purchased a home in Anchorage in September 2004. Then, in October 2004, Kenneth moved to the Pacific Northwest. Kenneth's stated reason for relocating in the Pacific Northwest was to be closer to family. Kenneth also testified that he left Alaska because "things got ugly" with regard to child custody disputes.

In November 2004 child support and custody were modified to reflect the fact that Kenneth had decided to move out of Alaska and was relinquishing the forty-one percent physical custody relationship he had previously been allotted in exchange for some weeks of visitation. The November order included a paragraph requesting updated financial affidavits so that the court could calculate new support obligations in accordance with Rule 90.3. Kenneth filed a motion with the court requesting that his May 2004 financial affidavit based upon his employment with Alcan Electric be used in calculating his new support obligations. Kenneth attested that he believed he would be able to meet his obligation through savings until he found new work. Thus, despite the fact that Kenneth was unemployed and living out of state at the time of the November 2004 order, his child support obligations were set at $804 based upon his previous income.

Once in the Pacific Northwest, Kenneth looked for work in several different towns in Washington and Oregon. He filed the necessary paperwork to obtain his reciprocal Washington state electrician license; he also took and passed the exam to become certified in Oregon. Kenneth inquired at various locals of the union for work, but was placed on "book two" rather than "book one" because of his newcomer status, which meant that he had very low priority for union jobs.[1] Kenneth ended up taking non-union construction work as a carpenter in Oregon in March 2005, earning seventeen dollars an hour. He held that job until August 2005 when he took a job with a wind technology company in

---

1. Placement within the books determines priority for receiving new union jobs. Long-term residents are placed in book one and have priority over the "travelers" who move into an area seeking work and are placed in book two. Within each book, workers are ranked based on how long they have been on the books without a long term job.

Washington where he saw greater opportunity for advancement. That job too paid Kenneth seventeen dollars an hour, as a site service technician, but it also guaranteed him a forty hour work week and offered him the opportunity to eventually earn twenty-two dollars an hour.

Kenneth acknowledged that the job situation in Alaska is clearly superior to that in Washington. In Alaska, there is typically a two-month turnaround between jobs. In one full year in Washington, on the other hand, he had received no IBEW employment and had barely gained any seniority in the union hiring list. He testified that although he knew he would be at the bottom of the list in a new place, he had not realized how difficult it would be to find work, because in Anchorage workers moved up the books quickly. Had he been able to secure IBEW work in Washington he could have expected pay around twenty-eight dollars per hour. While in Washington, Kenneth actively pursued higher-paying work, including regularly paying IBEW dues, attending meetings, and signing the books to show his availability for work.

### B. Proceedings

In February 2005 Kenneth filed a motion to modify child support, claiming that his gross annual income was below the federal poverty level for a family of three. Before his motion was ripe for decision, Kenneth advised the court that he had secured full-time employment and would be modifying his financial affidavit. In April 2005 Kenneth filed a motion to amend his motion to modify child support to reflect an annual income of $25,428. He claimed that this was a material change in circumstances from the May 2004 financial situation that the court had used to determine his existing support obligation. That May 2004 financial affidavit had reflected a gross annual income of $68,886 and a net income for child support purposes of $48,225.

A hearing was held in October 2005 before Superior Court Judge Philip R. Volland. In a written order dated December 1, 2005, Judge Volland reduced Kenneth's monthly child support from $804 a month to $477 a month as of March 1, 2005 after finding that he was not unreasonably underemployed.[2]

Sharen appeals this determination on two grounds. First, she argues that because Kenneth was already unemployed and out-of-state in November 2004 when the court modified the child support order to reflect Kenneth's relinquishment of custody, the superior court erred as a matter of law in finding a material change in circumstance at the time of the February 2005 motion to modify. Second, Sharen argues that the superior court abused its discretion in finding that Kenneth was not voluntarily and unreasonably underemployed.

### III. STANDARD OF REVIEW

In deciding whether to modify child support orders, trial courts have broad discretion.[3] We review a decision by the superior court to modify child support for an abuse of discretion and only overturn a decision when, based on a review of the whole record, we are "left with a definite and firm conviction that a mistake has been made."[4] On the other hand, whether the trial court applied the proper legal standard in determining that a change of material circumstances occurred is an issue of law which we review *de novo*.[5] We review the factual findings made by the superior court under the clearly erroneous standard.[6]

### IV. DISCUSSION

### A. The Superior Court Did Not Err in Finding a Material Change in Circumstances Warranting a Review of Child Support.

Sharen argues that because Kenneth was unemployed at the time of the November

---

**2.** The support order on appeal covers the period from March 1, 2005 through September 1, 2006, at which point the superior court again modified Kenneth's child support based on his new job.

**3.** *Olmstead v. Ziegler,* 42 P.3d 1102, 1104 (Alaska 2002).

**4.** *Id.* (quoting *Schuyler v. Briner,* 13 P.3d 738, 741 (Alaska 2000)).

**5.** *See Koller v. Reft,* 71 P.3d 800, 804 (Alaska 2003).

**6.** *Dunn v. Dunn,* 952 P.2d 268, 270 (Alaska 1998).

2004 child support order, a material change in circumstances did not occur by the time of the February 2005 motion to modify. Kenneth contends that Rule 90.3(h) defines material change in circumstances by comparing the outstanding child support order with what support would be under up-to-date Rule 90.3 calculations. Kenneth also argues that a change of circumstances occurred subsequent to the hearing because he failed to find work as anticipated.

Civil Rule 90.3(h) allows for modification of a child support award "upon a showing of a material change of circumstances.... A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order."

Because the existing order was for $804 per month and Rule 90.3 calculations using Kenneth's new income resulted in an order of $477 per month,[7] the superior court found that the reduction—forty percent of the award—signified a material change in circumstances. Sharen argues that this change of circumstance did not occur *after* the November 2004 support order because Kenneth was unemployed before November 2004. Sharen cites *Burrell v. Burrell*[8] for the proposition that the change in circumstance must be subsequent to the original order in order to be considered. In *Burrell* the court needed to determine when alimony payments had last been calculated by the court in order to determine whether there had been a material change of circumstances since that time.[9]

The court quoted an earlier child support case which held that "[g]enerally, the rule is that a modification of a support order may be obtained only where there has been a material and substantial change in circumstances occurring subsequent to the original order." [10] However, *Burrell* and the case that it relied upon, *Curley,* are distinguishable from the present situation because in this case no prior order evaluated the circumstances presented in the motion for modification. The November order for child support did not address or appear to contemplate the issue of Kenneth's unemployment, and instead simply requested updated financial affidavits. Moreover, a change in circumstance did occur subsequent to the November order—namely, Kenneth discovered that it was much harder to find work in the Pacific Northwest than he had anticipated.

The November 2004 court order provided that child support, which needed to be changed at that time due to the change in custody, would be modified on the basis of new financial affidavits and calculated in accordance with Rule 90.3.[11] Kenneth filed a notice stating that for the purposes of child support he would rely on his May 2004 financial affidavit which reported a total income of $68,886 and a net income for child support purposes of $48,225. Kenneth later stated under oath that he had "fully anticipated and expected that [he] would be able to sustain child support payments based on [his] Alaska employment wages out of [his] savings account until [he] was able to find work again."

---

**7.** The superior court first noted that Rule 90.3 would result in a support order of $446 per month but then decided to disallow Kenneth's temporary Oregon state tax deduction, thus resulting in a Rule 90.3 calculation of $477. The court used the $446 number in its calculations for the fifteen percent threshold test, but even using the court's eventual numbers the difference between the calculations for Kenneth's May 2004 income and his September 2005 income still exceeded forty percent.

**8.** 696 P.2d 157 (Alaska 1984).

**9.** *Id.* at 161.

**10.** *Id.* (quoting *Curley v. Curley,* 588 P.2d 289, 291 (Alaska 1979)).

**11.** Judge Volland's November 22, 2004 order stated: "Child support will be modified according to Rule 90.3, Alaska Rules of Civil Procedure, and the modification shall be effective November 1, 2004. [T]he parties shall each submit an updated DR–305 Child Support Guidelines Affidavit, within 30 days of the issuance of this order." However, it appears that Kenneth's October 20, 2004 "Notice Regarding Plaintiff's DR–305" anticipated the court's order and requested the court use his May 2004 financial affidavit based on his Alaska employment. The superior court interpreted this paragraph to mean that "the parties anticipated a change in child support," but within the context of the filings that change was most likely referring to the necessary modification due to the change in custody, rather than to additional modifications due to change in Kenneth's employment.

■ The fact that Kenneth consented to the court's use of an out-of-date financial affidavit which resulted in a higher presumptive child support payment is not equivalent to an agreement to deviate from Rule 90.3.[12] To the contrary, we have held that parents going through what appear to be temporary periods of unemployment can be expected to maintain their support obligation by using assets,[13] and that ordinarily support should not be modified for temporary reductions in income.[14] Thus, it was reasonable for both Kenneth and the court to rely on the out-of-date affidavit and to expect that Kenneth could meet his obligations with his savings in the interim. When Kenneth discovered that employment was more difficult to obtain than expected he filed a motion to modify child support, at that point using the discrepancy between the existing support order and the Rule 90.3 formula. This approach is consistent with Rule 90.3 and Alaska case law.

There is a tension in our case law between a bar on retroactive modification and a desire to prevent repeated modification for every twist and turn in an individual's income. Thus, parties are encouraged to make a motion for modification as soon as their income changes,[15] but it is not expected that every temporary change will produce a motion to modify.[16] Kenneth struck the proper balance here by not seeking a modification based upon what he anticipated to be a temporary period of unemployment, but by moving to modify when that unemployment proved more intractable. We conclude that under these circumstances the superior court did not err in utilizing the presumptive Rule 90.3(h)(1) test for a material change in circumstance.

**B. The Superior Court Did Not Abuse Its Discretion in Declining To Calculate Child Support Based on Kenneth's Potential Income.**

■ The superior court declined Sharen's request to base its child support order on Kenneth's potential income under Civil Rule 90.3(a)(4). Civil Rule 90.3(a)(4) reads in pertinent part: "The court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed." The superior court found that Kenneth's underemployment was reasonable in light of the legitimate reasons for his move and his diligent job search efforts. Sharen appeals the determination that Kenneth's underemployment was reasonable.

■ We have held that in cases involving the imputation of income "the trial court should consider the nature of the changes [in income] and the reason for the changes, and then determine whether under all the circumstances a modification is warranted."[17] Sufficient factual findings are required for imputing income or declining to impute income.[18] When a parent is seeking a modification of support due to a change in employment the court should consider "the extent to which the children will ultimately benefit

---

12. In such circumstances, we have held that the fifteen percent rule of Civil Rule 90.3 is inapplicable. *See Flannery v. Flannery*, 950 P.2d 126, 132 (Alaska 1997).

13. *Patch v. Patch*, 760 P.2d 526, 530 (Alaska 1988).

14. *Id.*

15. For example, Form DR–301 "Order for Modification of Child Support" instructs: "It is very important to ask the court [to change this order] as soon as a change occurs because child support cannot be changed retroactively...."

16. *See Patch*, 760 P.2d at 530 ("We agree ... that a trial court should be reluctant to modify child support obligations when the obligor's loss of income appears only temporary.").

17. *Olmstead v. Ziegler*, 42 P.3d 1102, 1105 (Alaska 2002) (internal quotation omitted).

18. *See Bird v. Starkey*, 914 P.2d 1246, 1249 (Alaska 1996) (holding that trial court must make sufficient findings of fact "so that a reviewing court may clearly understand the grounds on which the lower court reached its decision"); *Nass v. Seaton*, 904 P.2d 412, 419 (Alaska 1995) (remanding for sufficiently detailed factual findings which disclose court's methodology as well as factual basis for determining income level to be imputed); *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987) (remanding to inquire into why father has become a student, how long he anticipates being unemployed, and what his eventual career goals are) *overruled by Nass*, 904 P.2d at 416 n. 7, on other grounds.

from the change."[19]  None of the Alaska case law speaks to a change in circumstance exactly analogous to this one, where the obligor was attempting (and failing) to find work in his old profession in a much tighter job market following a move.

We conclude that the superior court properly examined the totality of the circumstances here.  The court noted Kenneth's extensive attempts to find high-paying work in Oregon and Washington.  The court noted that "Kenneth has sought employment to the best of his ability," that he actively registered with IBEW Local 112, that he had changed jobs for better pay and opportunity, and "presently works full-time."  The court found that under such circumstances Kenneth's underemployment was reasonable.

Sharen argues that Kenneth's efforts to secure employment were unreasonable because the move itself was ill-considered and impulsive.  Sharen notes that because the tight employment market in the Oregon and Washington area existed for some time, Kenneth could have learned of it with a few simple phone calls ahead of time.  Instead, Kenneth bought a house in Anchorage in September, opted to move away in October, and only then discovered how difficult it would be to find work as an electrician in Oregon or Washington.

While Sharen's points do highlight initial mistakes in planning on Kenneth's part, they do not diminish the diligence with which Kenneth attempted to find work once arriving in the Pacific Northwest or the reasonableness of Kenneth's choice to leave the state.  The court noted that Kenneth's decision to move was not unreasonable (and thus it would be inappropriate to impute income) because Kenneth had legitimate reasons for the move, including a desire to be closer to his family and his new wife's family.  The court also noted that the parties' daughter might benefit from Kenneth's move through the opportunity to better know her extended family and through diminished conflict between Kenneth and Sharen.

Sharen argues that because their daughter suffers from Kenneth's move, the court erred in finding the move to be reasonable.  Sharen also argues that the court did not consider the increased burden that diminished support would place on her and her child.  However, the superior court explicitly acknowledged this concern in noting that its change would lead to a forty percent reduction in support and nonetheless found that the totality of circumstances warranted the change.  Moreover, there is support in the record for the court's note that their child might benefit from Kenneth's move because the custody disputes subsequently decreased.  The record is replete with acrimonious motions alleging violations of the custody agreements.  Kenneth testified at the hearing that one of the reasons for his move was that "things just got ugly" in Anchorage regarding custody issues.  Both parents acknowledged at various points in the record that such disputes had a negative impact on their daughter.  And Sharen's counsel at the hearing seemed to concede that the disputes may have diminished with Kenneth in another state.[20]  In sum, there was adequate support in the record for the court's finding on this point.

Ultimately, there is nothing to indicate that the superior court abused its discretion in finding that Kenneth's underemployment was reasonable.  Sharen argues that the court's factual findings do not find support in the record.  However, as noted, the record contained ample support for the court's findings.  The court also gave great weight to Kenneth's efforts to find work, the fact that he was working full time, and his active pursuit of higher paying work which places this case in contrast to many other cases in which we have upheld the imputation of income.[21]

---

**19.**  Alaska R. Civ. P. 90.3 cmt. III.C., *cited in O'Connell v. Christenson*, 75 P.3d 1037, 1039 (Alaska 2003).

**20.**  After arguing that Kenneth caused the earlier tension by moving around frequently, Sharen's counsel stated "Maybe [the move to the Pacific Northwest], in fact, has reduced some tension

but it's unfortunate the reduction of tension is a person going 4,000 miles."

**21.**  *See Olmstead*, 42 P.3d at 1105 (upholding imputation of income against father, a lawyer, who closed his office, failed to keep regular business hours, and billed insufficient hours before quitting the law and reentering the education

The court evaluated the totality of the circumstances before determining that Kenneth's underemployment was reasonable. Because the court's factual findings are not clearly erroneous and because its weighing of the issues was not an abuse of discretion, we affirm.

## V. CONCLUSION

Because Kenneth's unexpected inability to find a new high-paying job despite diligent effort represented a material change in circumstances and because his subsequent underemployment was not unreasonable, we AFFIRM the superior court's modification of child support.

BRYNER, Justice, not participating.

system to train for a new career); *Dunn v. Dunn,* 952 P.2d 268, 271 (Alaska 1998) (upholding imputation of income against unemployed former builder who claimed shoulder pain limited his work opportunities but was actively building his own house); *Patch v. Patch,* 760 P.2d 526, 530 (Alaska 1988) (upholding denial of modification where father suffered temporary job loss due to suspended license).