*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOSHUA C. WILHOUR, | ) | |
| | ) | Supreme Court No. S-14764 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-10-03157 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JACQUELINE S. WILHOUR, | ) | |
| | ) | No. 6821 - September 6, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: David A. Golter, Golter & Logsdon, P.C., for Appellant. Notice of nonparticipation filed by Kenneth J. Goldman, Law Offices of Kenneth J. Goldman, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

I.      INTRODUCTION

After relocating in order to share custody of his son, Joshua Wilhour moved for a modification of child support based on both this new custody arrangement and a reduction in his income. Joshua and his former wife, Jacqueline Wilhour, each alleged that the other was voluntarily unemployed or underemployed. The court modified child support, basing its calculation of Joshua's income on what he had earned before his

move. Joshua appeals the court's order. He challenges the court's denial of his request for an evidentiary hearing; its findings on whether the parties were voluntarily unemployed or underemployed; and its selection of an effective date for the modification. We remand for an evidentiary hearing and for reconsideration of the effective date.

## II.    FACTS AND PROCEEDINGS

Joshua and Jacqueline Wilhour had a son, born in 2002. They lived in Healy until August 2010, when the couple separated and Jacqueline moved to Wasilla with their son. She filed for divorce soon after. The superior court issued a child custody decree in November 2011, awarding joint legal custody and granting Jacqueline primary physical custody. Joshua's monthly child support obligation was set at $992.15.

Joshua moved for reconsideration, asking that the court allow for an automatic reversion to joint physical custody if he moved from Healy to the Matanuska-Susitna Valley. The court granted Joshua's request, ordering "that in the event that Joshua relocates to the Mat-Su Valley on or before February 23, 2012, physical custody shall revert to an alternating weekly schedule."

Joshua relocated to the Valley before this deadline and on February 29, 2012, moved to modify child support, arguing that the change in custody resulting from his move constituted a substantial change in circumstances. He also contended that the move caused a significant reduction in his income, because he had quit his job in Healy with the Matanuska Telephone Association (MTA). In his accompanying affidavit, Joshua stated that he had recently signed up with the International Brotherhood of Electrical Workers (IBEW) and expected to begin seasonal work in a few months. He estimated, however, that his annual income from union work would be $40,000, less than what he had been earning with the MTA in Healy. He also attested that he had

increasingly painful arthritis in one knee, making it more difficult for him to do his former work as a lineman. He concluded that he "would still like to work full time for MTA if [he could] find a position that does not put such a strain on [his] knee" but that he intended to do seasonal work through the IBEW "for the time being, as this is currently the best and surest prospect [he has] for stable employment."

Jacqueline filed a limited opposition to Joshua's motion. She acknowledged that a modification of child support was warranted due to the change in custody, but she argued that Joshua was voluntarily unemployed, that his union work had the potential for income on par with what he had been making in Healy, and that his reduction in income was therefore only temporary. She asked that child support be determined using Joshua's previous income. She asserted that she was only "recently . . . getting back into the job market" herself but had yet to make any "substantial income," as shown by an attached W-2 from the Matanuska-Susitna Borough School District. In Joshua's reply, he asked that the court hold an evidentiary hearing to determine both parties' incomes and whether either of them was voluntarily unemployed or underemployed.

The superior court did not grant Joshua's request for an evidentiary hearing. It did, however, grant the motion to modify, taking into account the change in custody but using Joshua's previous income to calculate support. The court made these findings:

> Joshua indicates that his reduction in income is temporary as he is currently seeking full time work equivalent to his previous wages. Additionally, the reduction in income was the result of a voluntary, planned move to the Mat-Su Valley. Jacqueline has recently been getting back into the job market but she does not currently earn a substantial income; her ability to provide support is limited. The assets the parties have are involved in active litigation

and cannot be used to provide support. Joshua's future earning capability is consistent with his previous wages.

The court adopted Jacqueline's calculations for both parties' incomes, setting Joshua's obligation of support at $717.39 per month. The court selected April 1, 2012, as the effective date of the modification.

Joshua appeals, challenging the superior court's failure to hold an evidentiary hearing, its findings as to the parties' underemployment, and the order's effective date.

## III. STANDARD OF REVIEW

"Trial courts have broad discretion in deciding whether to modify child support orders."[1] We review a trial court's determination of whether to modify child support for an abuse of discretion.[2] We use the clearly erroneous standard when reviewing factual findings,[3] including findings regarding a party's income,[4] imputation

---

[1] *Olmstead v. Ziegler*, 42 P.3d 1102, 1104 (Alaska 2002) (citing *Patch v. Patch*, 760 P.2d 526, 529 (Alaska 1988)).

[2] *Id.* (citing *Schuyler v. Briner*, 13 P.3d 738, 741 (Alaska 2000)).

[3] *Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000) (citing *Dodson v. Dodson*, 955 P.2d 902, 905 (Alaska 1998)).

[4] *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003) (citing *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001)).

of income,[5] and voluntary underemployment.[6]  We use our independent judgment in deciding whether the superior court erred in not holding an evidentiary hearing.[7]

## IV.    DISCUSSION

### A.    The Superior Court Erred In Declining To Hold An Evidentiary Hearing.

Alaska Civil Rule 90.3 provides for the modification of child support orders when there has been a showing of a material change in circumstances.[8]  A hearing is not required when there is no genuine issue of material fact.[9]  "[G]eneralized allegations of factual issues that other record evidence convincingly refutes" do not create genuine issues of material fact.[10]  Joshua contends that there are several factual issues that warrant an evidentiary hearing in this case.

He argues first that there is a factual dispute as to whether his reduction in income is indeed temporary.  To warrant modification, a material change in circumstances "ordinarily must be more or less permanent rather than temporary."[11]  The superior court found that "Joshua indicates that his reduction in income is temporary as

---

[5]      *Ward v. Urling*, 167 P.3d 48, 52 (Alaska 2007) (citing *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998)).

[6]      *See id.* (citing *Robinson v. Robinson*, 961 P.2d 1000, 1004 (Alaska 1998)).

[7]      *Routh*, 19 P.3d at 595 (citing *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)).

[8]      Alaska R. Civ. P. 90.3(h)(1).

[9]      *See Epperson v. Epperson*, 835 P.2d 451, 453 (Alaska 1992).

[10]     *Acevedo v. Burley*, 944 P.2d 473, 475 (Alaska 1997) (internal quotation marks omitted) (quoting *Epperson*, 835 P.2d at 453 n.4).

[11]     *Hill v. Bloom*, 235 P.3d 215, 218 (Alaska 2010) (quoting *Patch v. Patch*, 760 P.2d 526, 529 (Alaska 1988)) (internal quotation marks omitted).

he is currently seeking full time work equivalent to his previous wages." But Joshua never indicated that he was likely to find work that paid as well as his job in Healy. He stated in his affidavit that he had attempted to transfer to a comparable position with MTA in the Mat-Su Valley but was told that no such position was available. While he still hoped to find a full-time position with MTA consistent with his physical limitations, "the best and surest prospect [he had] for stable employment" was seasonal work through the IBEW. Joshua estimated that this seasonal union work would provide an annual income of approximately $40,000, basing this estimate on his annual earnings of $35,000 while working through the union in 1999. Jacqueline did not present any evidence contradicting these assertions. She simply argued that "it is clear that [as an] IBEW union worker, if [Joshua] chooses to have employment, [he] will be able to obtain employment consistent with his previous income." But by explaining in his affidavit why he expects that his future income is likely to be considerably less than what he was earning in Healy, Joshua raised a genuine factual dispute as to whether his reduction in income is temporary.

Joshua also contends there is a genuine factual dispute about the amount of Jacqueline's income. He does not offer conflicting evidence, instead arguing that the evidence she submitted did not provide the court with a sufficient basis on which her income could be determined. Along with her limited opposition to Joshua's motion to modify custody, Jacqueline submitted an unsigned Shared Custody Child Support Calculation worksheet, a 2011 W-2 from the school district, and a Child Support Services Division calculator print-out. Joshua points out that the W-2, which displays only Jacqueline's total income for 2011, does not show whether the amount was earned throughout the year or in just a portion of it, and he argues that this document by itself is not proof of Jacqueline's earning potential.

Civil Rule 90.3 requires that each parent involved in a child support proceeding "provide the court with an income statement under oath" along with verifying "documentation of current and past income," which "might include paystubs, employer statements, or copies of federal tax returns."[12] "In determining earning capacity for Rule 90.3 purposes, the court has discretion, on the evidence before it, to choose the best indicator of . . . future earning capacity."[13] However, "trial courts must take all evidence necessary to accurately reflect the parties' economic reality."[14] We agree with Joshua that there was an issue of fact as to Jacqueline's income that her limited submissions did not resolve. The superior court on remand should take whatever additional evidence is necessary to ensure that it has an accurate picture of Jacqueline's potential income as well as Joshua's.

The superior court does not appear to have based its modification order on a finding that either parent was underemployed. Though observing that Joshua's move to the Valley was "voluntary [and] planned," the court found that his reduction in income was merely temporary and thus did not by itself justify a change in support. As for

---

[12]    Alaska R. Civ. P. 90.3 cmt. VIII.A. "The commentary, prepared by the Child Support Guidelines Committee, has not been adopted or approved by this court." *Marine v. Marine*, 957 P.2d 314, 316 n.5 (Alaska 1998). However, "[we] often rel[y] upon the commentary for guidance in child support matters." *Bunn v. House*, 934 P.2d 753, 755 n.7 (Alaska 1997) (citing *Coghill v. Coghill*, 836 P.2d 921, 926 (Alaska 1992); *Ogard v. Ogard*, 808 P.2d 815, 819 (Alaska 1991)).

[13]    *Renfro v. Renfro*, 848 P.2d 830, 833 (Alaska 1993) (quoting *Coghill*, 836 P.2d at 926) (internal quotation marks omitted); *see also Byers v. Ovitt*, 133 P.3d 676, 682 (Alaska 2006) (finding that superior court was within its discretion in imputing income based on estimated expenses where party had submitted varying and incomplete versions of tax returns).

[14]    *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001) (quoting *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)) (internal quotation marks omitted).

Jacqueline, the court apparently decided that she was employed to her potential, which at the time was "limited." The court on remand may have to address the parties' allegations that the other is underemployed. We note that the potential rather than actual income of an underemployed parent may be used in the calculation of child support only if the parent is "voluntarily and unreasonably" underemployed.[15] "In determining whether to modify child support following a voluntary employment change, a trial court should consider the nature of and the reason for the change, and determine whether a modification is warranted under all the circumstances."[16] An important part of the calculus is "the extent to which the children will ultimately benefit from the change."[17] All else being equal, the fact that a parent voluntarily leaves a better-paying job in order to be closer to a child and share the child's custody should rarely weigh *against* that parent in determining whether a reduction in child support is warranted.

### B. The Superior Court Erred In Setting The Effective Date Of Modification.

Joshua argues that the superior court erred in setting the effective date of modification as April 1, 2012, instead of March 1, 2012, the first day of the month following the date he served the motion for modification. We have stated a preference for using the date the motion was served as the effective date, holding that "the superior court should exercise its discretion in selecting a different effective date only if it finds

---

[15] Alaska R. Civ. P. 90.3(a)(4).

[16] *Maloney v. Maloney*, 969 P.2d 1148, 1151 (Alaska 1998).

[17] *Richardson v. Kohlin*, 175 P.3d 43, 48-49 (Alaska 2008) (quoting Alaska R. Civ. P. 90.3 cmt. III.C).

good cause for doing so."[18]  The reasons for this preference include that "child support reflects the child's current needs"; "child support is both based on and paid out of the obligor's current income"; and "service of the motion gives the opposing party both fair warning that support may change and an opportunity to reassess, even before the court rules, the correct amount of support," thus "minimiz[ing] prejudice when relief is granted effective as of the service date."[19]  In *Tillmon v. Tillmon*, we remanded the case where the superior court had selected, without explanation, an effective date several months after the service date of the motion.[20]  In this case Joshua filed his motion to modify child support on February 29, 2012, and served the motion by mail the same day.[21]  Yet the superior court set the effective date as April 1, 2012.  As in *Tillmon*, the superior court did not explain why it chose an effective date that was later than the date of service.  On remand, the superior court should set the effective date as March 1, 2012, or explain why a later date is appropriate.

## V.     CONCLUSION

We VACATE the superior court's child support modification order and REMAND for an evidentiary hearing consistent with this opinion and for reconsideration of the order's effective date.

---

[18]     *Boone v. Boone*, 960 P.2d 579, 585 (Alaska 1998).

[19]     *Id*. at 585-86.

[20]     189 P.3d 1022, 1030 (Alaska 2008).

[21]     "Service by mail is complete upon mailing."  Alaska R. Civ. P. 5(b).