NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230106-U

NO. 4-23-0106

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Adoption of Z.O., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (Brian D. and Katie D., | ) | Tazewell County |
|     Petitioners-Appellants, | ) | No. 22AD13 |
|     v. | ) | |
| Cassandra D. and Daniel B., | ) | Honorable |
|     Respondents-Appellees). | ) | David A. Brown, |
| | ) | Judge Presiding. |

_____

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in staying adoption proceedings pending progress in a concurrent juvenile proceeding.

¶ 2    In January 2023, the trial court continued a stay of proceedings related to petitioners Brian D. and Katie D.'s petition for adoption of the minor child Z.O. pending further developments in a concurrent juvenile proceeding involving Z.O.'s biological father, respondent Daniel B. Petitioners appeal the court's continuance of a stay of the proceedings on their adoption petition. We affirm.

¶ 3                      I. BACKGROUND

¶ 4    In April 2022, petitioners learned respondent Cassandra D. was expecting a child, Z.O. Petitioners had adopted Cassandra D.'s son and Z.O.'s half sibling in 2017. Through counsel, Katie D. negotiated for Cassandra D. to appoint her as short-term guardian for Z.O.

upon his birth. On April 8, 2022, Cassandra D. executed the short-term guardianship appointing Katie D. as guardian and an affidavit of nonidentification in which Cassandra D. stated she was "unsure" of the identity of Z.O.'s biological father. An addendum to the short-term guardianship agreement stated that petitioners "plan[ned] to file for an adoption as soon as possible."

¶ 5        Z.O. was born on April 9, 2022, with amphetamines, opiates, and cocaine in his system and was experiencing withdrawal at birth. The Illinois Department of Children and Family Services (DCFS) received a report based on Z.O. For reasons unclear from the record, Z.O. was not released to Katie D. when she arrived at the hospital to retrieve him.

¶ 6        On April 12, 2022, petitioners filed a petition to adopt Z.O. The petition stated that Cassandra D. "indicated a willingness to consent to the adoption." Petitioners asked to consolidate the adoption proceedings with any DCFS proceedings.

¶ 7        On April 13, 2022, DCFS filed a shelter care petition alleging neglect. The trial court awarded DCFS temporary custody, and Z.O. was placed with Cassandra D.'s aunt.

¶ 8        On April 22, 2022, the trial court consolidated the pending juvenile court action and the adoption action. The court determined the short-term guardianship by Katie D. was valid and allowed for visitation with petitioners. The court ordered DCFS to start proceedings pursuant to the Interstate Compact on the Placement of Children, as petitioners resided in Nebraska. The court also directed the State to serve "the putative father [and] father's unknown." It is at this point in the record Daniel B. is first mentioned.

¶ 9        On May 13, 2022, the trial court entered an arraignment order. The order stated that Cassandra D. and unknown fathers were defaulted, but it also instructed DCFS to run a diligent search on Daniel B. and arrange and pay for DNA testing to determine paternity. Z.O.

was placed in Katie D.'s custody, and on June 24, 2022, Katie D. was permitted to take Z.O. to Nebraska.

¶ 10 On July 14, 2022, a DNA test confirmed Daniel B. was the biological father of Z.O. Shortly thereafter, Cassandra D. revoked the short-term guardianship. Cassandra D. stated in her notice of revocation she did not "wish to consent to the adoption of [Z.O.] by any person." Cassandra D. also stated that, when she agreed to the short-term guardianship, she was under the influence of drugs, was not taking mental health medications, and did not understand what she was signing. After the revocation, DCFS was named guardian of Z.O.

¶ 11 In August 2022, petitioners filed an amended petition for adoption, naming Daniel B. and Cassandra D. as biological parents. In the amended petition, petitioners argued both biological parents were unfit persons as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). According to the petition, Cassandra D. was unfit due to (1) abandoning Z.O. at the hospital after giving birth, (2) her longstanding history of drug abuse, (3) failing to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of Z.O., and (4) her present incarceration. The petition alleged Daniel B. was unfit for failing to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of Z.O., asserting Daniel B. knew he was Z.O.'s father and failed to register with the Illinois Putative Father Registry. The petition also argued Daniel B. "evidenced his intent to forgo his parental rights" by failing to commence legal proceedings to establish paternity after he was informed he was Z.O.'s biological father.

¶ 12 Daniel B. initially filed a response to the amended petition for adoption admitting he did not register with the Illinois Putative Father Registry but denying that he was sure he was

Z.O.'s father, as "there were multiple potential fathers." Daniel B. also stated that, as soon as he found out he was Z.O.'s biological father, he pursued custody and never consented to adoption.

¶ 13    In September 2022, the trial court entered a dispositional order in the juvenile case. (We note the dispositional order is not part of the record on appeal. However, the results of the dispositional order are reflected in the record.) The court found Daniel B. fit but unable to care for Z.O., and Daniel B. was permitted unsupervised visits with Z.O. Further, Z.O. was removed from petitioners' care and placed in the care of Daniel B.'s mother.

¶ 14    The petition for adoption was set for trial in October 2022, and Daniel B. requested and was granted a continuance. DCFS filed a motion for leave to intervene in the adoption proceedings, which the trial court also granted.

¶ 15    DCFS and Cassandra D. filed motions to dismiss the amended adoption petition. Daniel B., after filing a motion for leave to withdraw his answer, joined DCFS's motion to dismiss. DCFS alleged in its motion to dismiss the adoption matter was premature "as the Juvenile Court retains exclusive jurisdiction over the custody, guardianship, and placement of the child" and Z.O. was not available for adoption under the Adoption Act. DCFS also requested, in the alternative, that the trial court stay the adoption proceedings pending the resolution of the juvenile case. Cassandra D.'s motion made similar arguments.

¶ 16    In response, petitioners argued the juvenile court did not have exclusive jurisdiction merely because there was a pending juvenile case, and the juvenile and adoption proceedings could be litigated in concert with each other. Petitioners argued that, as the petition for adoption was filed first in time, any stay should apply to the juvenile case, not the adoption case.

- 4 -

¶ 17        After a November 2022 hearing, the trial court denied the motions to dismiss but stayed the adoption proceeding until the first permanency hearing, set for January 2023. The court determined that it had jurisdiction over both the juvenile and adoption proceedings and that it was possible the petitioners could demonstrate Z.O. was available for adoption. The court further found that, although it could continue through the fitness phase of the adoption process, the best interest phase would be dependent on the proceedings of the juvenile case. The court therefore determined, "I think the best course and what's in the best interest of the child is that I stay the adoption until I have some further information on the [juvenile] case." The court clarified it was not staying the adoption proceedings "indefinitely," but would make a determination based on the January 6, 2023, permanency review hearing.

¶ 18        Petitioners filed a motion to reconsider the stay of the adoption proceedings. In their motion, petitioners argued the adoption proceeding "must be given priority over the juvenile matter."

¶ 19        On January 6, 2023, the trial court held the permanency hearing in the juvenile case. After hearing testimony on Daniel B.'s progress with services, his financial support to the foster mother, and his relationship with Z.O., the court found Daniel B. made reasonable efforts and reasonable progress and set the goal as to Daniel B. to return home in five months. The court set the next permanency review hearing for four months, stating:

> "I think by then, [Daniel B.], we ought to have a clear picture as to whether this is gonna be a child being placed in your care or we have to go hard in a different direction because it doesn't look like [Cassandra D. is] gonna be a viable option for quite some time."

¶ 20        The trial court then proceeded to a hearing on petitioners' motion to reconsider the stay. The court disagreed with petitioners the adoption case had priority and declined to reconsider or lift the stay. The court stated:

> "Bottom line though is I need to keep administering a case for [Z.O.] on the abuse and neglect side of things, and I think the adoption needs to take a backseat for a lot of reasons, but primarily because if we return the child to his father, I think that's gonna substantially effect [*sic*] any adoption case, at least one or both phases of it."

¶ 21        In its written motion denying the motion to reconsider the stay, the trial court included a statement that the decision was "a final and appealable decision" pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 22        This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24        As an initial matter, we must determine our jurisdiction to hear this case. See, *e.g.*, *In re J.M.*, 2023 IL App (4th) 220537, ¶ 17 ("[W]e have an independent duty to examine our jurisdiction."). Petitioners initially assert jurisdiction is proper under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) due to the trial court's Rule 304(a) finding following its decision on their motion to reconsider the stay. Despite the court's Rule 304(a) finding, the January 6, 2023, stay was not a final judgment as to one or more parties or claims. See *id.* Therefore, this court does not have jurisdiction under Rule 304(a) to consider the grant of a stay on appeal. As DCFS points out, however, Rule 307(a)(1) grants this court jurisdiction over appeals taken from orders "granting *** an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). As this court has previously stated, "a stay of proceedings is indeed an injunction." (Internal quotation marks

omitted.) *Lisk v. Lisk*, 2020 IL App (4th) 190364, ¶ 20. Therefore, this court has jurisdiction to review the January 6, 2023, stay of adoption proceedings in this case.

¶ 25　　　　We review a trial court's order staying a case with an abuse-of-discretion standard, and we reverse only where there has been an abuse of that discretion. *Save Our Illinois Land v. Illinois Commerce Comm'n*, 2022 IL App (4th) 210008, ¶ 147. The abuse-of-discretion standard of review "is the most deferential standard of review—next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Lisk*, 2020 IL App (4th) 190364, ¶ 22.

¶ 26　　　　A trial court's authority to grant a stay of proceedings is grounded in its general power to control the disposition of cases. *Id.* ¶ 23. When a court is considering whether to grant a stay, factors for consideration include "the orderly administration of justice, judicial economy, comity, prevention of multiplicity, vexation, and harassment." *Id.* "When several actions are pending that involve substantially the same subject matter, a court may stay the proceedings in one matter to see whether the disposition of one action may settle the other." *Id.*

¶ 27　　　　In this case, the adoption case and the juvenile case both involved the same subject matter—the placement of Z.O. Therefore, the disposition of either case was likely to resolve the other. On its face, staying one proceeding to see if the other might resolve the situation was well within the trial court's general power and discretion. At the January 6, 2023, permanency hearing, the court set the permanency goal to return to Daniel B. within five months. Should Z.O. be returned home to Daniel B., there would be no question Z.O. was unavailable for adoption by petitioners, resolving the adoption proceeding in its entirety.

¶ 28            "The overriding concern of both the Adoption Act and the Juvenile Court Act [of 1987 (Juvenile Court Act)] is the best interests of the child." *In re Marriage of T.H.*, 255 Ill. App. 3d 247, 253 (1993). Therefore, in the context of these competing matters, the trial court must consider what course would be in the best interest of Z.O. It is arguable that, by proceeding with the juvenile case and temporarily staying the adoption case, the court was able to determine in the most expeditious manner whether Daniel B. would be likely to complete services and take custody of Z.O. Should Daniel B. demonstrate in the interim he was not a fit parent, the court would be free to consider the adoption petition with sufficient evidence of the biological parents' unfitness. The court explicitly laid out this plan when it set permanency review for four months, stating, "I think by then *** we ought to have a clear picture as to whether this is gonna be a child being placed in your care or we have to go hard in a different direction." By staying the adoption proceedings, the court gave Z.O. the greatest opportunity for permanence as quickly as possible, whether that permanence be with Daniel B. or an adoptive placement. Because this is a reasonable interpretation of what would be in the best interest of Z.O., we will not disturb the court's decision.

¶ 29            Petitioners cite *In re Adoption of M.C.*, 2022 IL App (5th) 220422-U, and suggest that it is persuasive authority for the proposition that the adoption and the juvenile case should proceed in concert. In *M.C.*, the minor was made a ward of the court during juvenile neglect proceedings involving the minor's mother. *Id.* ¶ 5. The minor's father was deceased, and the minor's paternal grandparents filed an amended petition for adoption. *Id.* ¶¶ 4, 12. DCFS filed a motion to dismiss or, in the alternative, stay the adoption case until the resolution of the juvenile case, arguing the trial court lacked jurisdiction and the minor was not available for adoption. *Id.*

¶¶ 13, 15. The court agreed it lacked jurisdiction and dismissed the adoption petition, declining to consolidate the adoption and juvenile matters. *Id.* ¶ 17.

¶ 30    On appeal, the Fifth District Appellate Court determined that the trial court erred in dismissing the adoption petition. *Id.* ¶ 29. The appellate court determined the trial court had subject matter and personal jurisdiction over the adoption proceedings. *Id.* ¶ 26. As "neither the Adoption Act nor the Juvenile Court Act mandated that a subsequently filed adoption petition be heard prior to a petition to terminate parental rights," it followed "both the adoption petition and the Juvenile Court Act proceeding could advance simultaneously." *Id.* ¶¶ 28, 29. The court also determined the trial court abused its discretion by denying the motion to consolidate the adoption case with the juvenile case, as "[t]his would have permitted the overlapping issues to be decided simultaneously, allowing for expeditious resolution of the two proceedings." *Id.* ¶ 33.

¶ 31    This case is distinguishable from *M.C.* in several ways. *M.C.* involved a finality of the adoption proceedings in a way not at issue here. The trial court here denied the motions to dismiss, opting instead to stay the adoption proceeding to avoid such finality. In fact, the trial court specifically noted it was not staying the adoption proceeding indefinitely, but rather only until it could determine the direction the juvenile case was proceeding. Second, *M.C.* involved a termination of parental rights action which was already proceeding. Therefore, the termination and adoption actions had several overlapping issues which could proceed together without conflict. Here, Daniel B. was complying with services and might well gain custody of Z.O. The adoption proceeding and juvenile proceeding were therefore in conflict with each other. Finally, we note that the appellate court in *M.C.* determined, contrary to the finding of the trial court, that "both the adoption petition and the Juvenile Court Act proceeding *could* advance simultaneously." (Emphasis added.) *Id.* ¶ 29. Here, the trial court never found the proceedings

*could not* advance simultaneously. Rather, there was nothing to support a determination that the proceedings *must* advance simultaneously. We find *M.C.* is not persuasive for the present case.

¶ 32        Petitioners also argue that, if a stay were necessary, the juvenile court case should have been stayed while the adoption case proceeded. Petitioners reason the adoption case was filed "first in time" and therefore "convention" dictates their case should take preference. Assuming petitioners are correct the adoption petition was filed first in time, their argument still fails. Petitioners cite no case which applies a first-in-time principle in the context of the best interest of a child, and we do not find the cases they cite—cases involving school boundary changes—to be analogous. See *Rodgers v. Desiderio*, 274 Ill. App. 3d 446, 449 (1995).

¶ 33        Finally, petitioners highlight the substantial prejudice against them as a result of the stay. However, none of their examples of prejudice are the result of the trial court's stay of proceedings. Z.O. was removed from their care not because of the stay but because Cassandra D. withdrew the short-term guardianship. The stay had no effect on Z.O.'s placement in the juvenile case. The stay similarly had no effect on petitioners' right to visitation. Whether visits were occurring was not dependent on the adoption case proceeding. Moreover, both the Adoption Act and the Juvenile Court Act "contain strict requirements that embody Illinois's policy favoring parents' superior right to the custody of their children." *In re N.G.*, 2018 IL 121939, ¶ 27. Indeed, "[p]arents have a constitutional right to the custody of their children with all the rights and responsibilities that custody entails," but this fundamental right "is not absolute." *In re O.S.*, 364 Ill. App. 3d 628, 637 (2006). Deprivation of a parent's constitutional right to his or her children must comply with due process. *Id.* "Due process in this instance is achieved by compliance with the provisions of the Juvenile Court Act and fundamental fairness." *Id.* at 638.

Allowing Daniel B. a fair opportunity to complete his services and gain custody of Z.O. is consistent with the letter and spirit of the Juvenile Court Act.

¶ 34 In sum, we do not find the trial court abused its discretion in staying the adoption proceedings pending further progress in the juvenile matter. See *Lisk*, 2020 IL App (4th) 190364, ¶ 22.

¶ 35 III. CONCLUSION

¶ 36 For the reasons stated, we affirm the trial court's judgment.

¶ 37 Affirmed.